LYNN REDEVELOPMENT AUTHORITY *vs.* CITY OF LYNN.

Essex.   November 4, 1971. — November 15, 1971.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Municipal Corporations,* Contracts, Municipal finance.   *Urban Renewal.*
    *Words,* "Department."

The word "department" as used in G. L. c. 44, § 31, does not include a
    city council. [504–505]
The provision of G. L. c. 44, § 31, as amended through St. 1955, c. 259,
    that "No department financed by municipal revenue . . . of any city
    . . . shall incur a liability in excess of the appropriation made for the
    use of such department," does not apply to contract liabilities
    incurred by a city council acting in concert with the mayor nor
    relieve the city of payment of such liabilities. [504–505]
By virtue of the entire scheme of G. L. c. 121, a municipality has
    authority to contract for necessary long-range urban renewal
    projects without making appropriations sufficient to cover its entire
    liability under such a contract in any one year, and may meet such
    obligations by a long-range payment schedule. [505–506]

CONTRACT.   Writ in the Superior Court dated September 8, 1970.

The action was heard by *Bennett,* J.

*Philip L. Sisk (John T. Ronan* with him) for the plaintiff.

*Charles Ingram* for the interveners.

REARDON, J.   This is an action of ·contract brought by
the Lynn Redevelopment Authority (authority) against the
city of Lynn alleging a breach of an express contract by
the city and seeking damages in the sum of $3,940,931.
The defendant answered by way of general denial and that
the contract was in violation of G. L. c. 44, § 31, as amended
through St. 1955, c. 259, in that "at the time of entering
into the alleged contract no appropriation had been made
for the payment of the obligation incurred."   Both parties
waived trial by jury and the case comes to us on report by a
Superior Court judge.   Alice Linda Benson and others were

allowed to intervene by leave of court and briefs have been filed by them. The plaintiff, the defendant and the interveners stipulated to certain facts including the following.

The authority and the city entered into a written contract dated December 12, 1967, which was signed by the then mayor after authorization by the city council by a nine to two vote. The plaintiff has substantially performed its obligations under the contract and is in no sense in default. Under the contract the city was due to pay the authority the sum of $3,940,931 by January 30, 1969. The city has failed to make any payment although demand for the same was made upon the city on June 22, 1970. The questions raised by the action are (1) whether the interveners have standing, (2) whether G. L. c. 44, § 31, applies to the contract of December 12, 1967, and (3) whether a motion for summary judgment filed by the authority pursuant to G. L. c. 231, § 59, as amended through St. 1965, c. 491, § 1, should be allowed. It is our view that, notwithstanding a serious question as to the standing of the interveners to move in this matter, we should proceed to a consideration of the principal issue, namely, whether G. L. c. 44, § 31, governs the contract between the authority and the city.

We hold that it does not. As has been contended by the authority, G. L. c. 44, § 31, on its face is concerned with departmental appropriations. The initial language of the section is, "No department financed by municipal revenue . . . of any city . . . shall incur a liability in excess of the appropriation made for the use of such department, each item recommended by the mayor and voted by the council . . . being considered as a separate appropriation . . . ." We think that the term "department" as used in § 31 does not include within its scope a city "council." We agree with the holding in *Audit Co. of N. Y.* v. *Louisville*, 185 F. 349 (6th Cir.). There the court was faced with interpreting a statute not unlike the one before us. A contract with the plaintiff was executed by the mayor of the city with the authorization of the city council. The court at page 355 said the following: "The next criticism is that no appropria-

tion for the expenses involved in the contract had been made before the contract was executed; and to support this objection section 2820 . . . [is] cited. Section 2820 is as follows: 'No executive board, officer or employee thereof shall have the power to bind the city by any contract or agreement or any other way to any extent beyond the amount of money at the time already appropriated for the purpose of the department under the control of said board.' . . . Section 2820 seems plainly to refer only to the act of an executive board or its representatives, and is for the purpose of compelling the boards to keep within their appropriations; it does not have any reference to the acts of the general council." In the instant case we rule that a city council acting in concert with the mayor is not a department that shall not "incur a liability in excess of the appropriation made for the use of such department." G. L. c. 44, § 31.

We move to a consideration of G. L. c. 121, Part VIII, §§ 26WW–26BBB, as appearing in St. 1955, c. 654, § 4, which are concerned with urban renewal projects. There, in § 26BBB, broad authority is given to municipalities operating under the legislative declaration of necessity "to do any and all things necessary to aid and co-operate in the planning and undertaking of an urban renewal project in the area in which such city . . . or public body is authorized to act, including the furnishing of such financial and other assistance as the city . . . is authorized by the housing authority law to furnish for or in connection with a land assembly and redevelopment plan or project." See *Bowker* v. *Worcester*, 334 Mass. 422, 434.

General Laws c. 121, § 26MM, makes applicable to the law governing land assembly and redevelopment projects certain sections of other parts of c. 121. Among those is § 26Y which provides in part that "[t]he mayor of the city, with the approval of the city council, . . . [is] hereby designated as the governing body of the city . . . for such approval of a project as may be required by federal legislation." Another applicable section is § 26CC, as amended through St. 1966, c. 692, § 2, which states that "[a] city

. . . in which a housing or redevelopment authority has been organized may raise and appropriate, or incur debt, or agree with such authority or with the federal government or the commonwealth to raise and appropriate or incur debt, in aid of such authority, such sums as may be necessary for defraying all of the development, acquisition and operating costs of a . . . redevelopment, urban renewal . . . or low rent housing project within such city . . . ."

Of further assistance in our determination is the language of § 26BBB, which provides in part, "Any public body is hereby authorized to enter into agreements, which may extend over any period, notwithstanding any provision or rule of law to the contrary, with any other public body or bodies respecting action to be taken pursuant to any of the powers granted by sections twenty-six YY to twenty-six BBB, inclusive, including the furnishing of funds or other assistance in connection with an urban renewal plan or urban renewal project."

It seems clear to us that the entire scheme of G. L. c. 121, with particular reference to the quoted sections, is designed to place a municipality in a position where it can contract in the very manner in which it did here for necessary urban renewal. It is not common sense in the light of the quoted language to endeavor to apply G. L. c. 44, § 31, to this situation and thereby require in a given year an appropriation of approximately $4,000,000 for the purpose of an urban renewal contract with the authority. The resulting havoc to the municipal tax rate is obvious. The statutes are clearly designed to allow elbow room to the authority and the city to plan long-range developments so that a long-range payout by the city of its financial obligation will cause a minimum of strain. See relative to similar problems *Salisbury Water Supply Co.* v. *Salisbury,* 341 Mass. 42, 47. There is no necessity of substantial citation of authority in the face of the plain meaning of the statutes to which we have referred.

The entire record presents no issues other than those resolved in this opinion. It follows that summary judgment

is to be entered for the plaintiff in the sum of $3,940,931, with interest from June 22, 1970, the date of demand.

*So ordered.*