NORTON TEACHERS ASSOCIATION & another *vs.* TOWN OF NORTON & another.

Bristol. November 8, 1971. — February 11, 1972.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*School and School Committee. Municipal Corporations,* Municipal finance. *Contract,* Validity, School teacher.

Where it appeared that an increase in a salary schedule provided for in a collective bargaining agreement between the school committee of a town and a teachers' association was unenforceable for a period from September through December because of insufficiency of the school committee's appropriation for that year and because of failure by the annual town meeting in the ensuing year to vote an appropriation covering the salary increase for such four month period, that thereafter an amendment to the agreement reduced the salary schedule for such four month period to correspond to amounts actually paid and increased the salary schedule for certain months of the ensuing year to compensate for the earlier underpayment, and that the appropriation of the school committee for the ensuing year was sufficient to pay the increased salary schedule provided for by the amendment, the agreement with its amendment did not violate G. L. c. 44, § 31, and was valid and enforceable. [153–155]

BILL IN EQUITY filed in the Superior Court on July 3, 1969.

The suit was heard by *Ponte,* J.

*Ernest L. White, Jr.,* & *Lewis S. Rubin* for the defendants.

*Jeffrey M. Freedman* & *Andre C. Jasse* for the plaintiffs.

REARDON, J.   This is a bill brought under G. L. c. 231A, in which the Norton Teachers Association and the Norton School Committee seek a determination of the validity of certain provisions of a collective bargaining contract entitling teachers to a salary increase in 1969.   The plaintiffs seek also an order requiring the town of Norton and Edward S. Smith, Jr., its treasurer, to make payments in accordance with the provisions of the agreement.   The defendants appeal from a final decree ordering them to pay the sums due under the agreement for 1969.

The trial judge made certain findings, rulings, and an order, which he adopted as a report of material facts. We summarize those facts, together with others we find for ourselves.   *Attorney Gen.* v. *Woburn*, 317 Mass. 465.

On September 3, 1968, the plaintiffs entered into a collective bargaining agreement pursuant to G. L. c. 149, §§ 178G–178N.   The agreement, which covered the period between September 2, 1968, and August 31, 1970, provided for a higher salary schedule than one previously in effect.[1]   The contract contained provisions for renegotiation on compensation.   The 1968 appropriation of the school committee was insufficient to cover the increased salaries for the period September 2, 1968, to December 31, 1968.   For that period the teachers were thus paid at a rate lower than that called for by the September 3 agreement.

On March 4, 1969, the annual town meeting voted down the following item in the warrant requested by the school committee: "To see if the Town will vote to raise sufficient money for teachers' salary and interest from September 1, 1968, to December 31, 1968, or take any action relative thereto."   At that same meeting $1,287,462 was appropriated for the schools for 1969.   It was a blanket appropriation and not detailed item by item.

On March 26, 1969, the collective bargaining agreement was amended for the second time.   The amendment

---

[1] On December 9, 1968, the contract was first amended to provide for an even higher salary schedule effective September 2, 1969.   This amendment is not in issue.

revised the salary schedule in the following way: (a)
salaries for the period September 3 – December 31, 1968,
were reduced to correspond with the amounts actually
paid; (b) salaries for January 1, 1969 – March 9, 1969,
were left at the levels originally provided for by the Sep-
tember 3, 1968, agreement; (c) salaries for March 10,
1969, to June 30, 1969, were higher than provided for in
the September 3, 1968, agreement.  The preamble to the
amendment suggests the purpose of placing the teachers
and other professional employees covered by the agree-
ment in the financial position which would have been
theirs had the school committee been able to meet its sal-
ary obligations under the original agreement from Sep-
tember 2, to December 31, 1968, or had the town voted in
favor of the warrant item requested by the committee.[2]
The total appropriation for the 1969 school budget was
sufficient to cover the higher salaries provided for in the
amendment.  The trial judge found that "the School
Committee at all times was acting in good faith in an
effort to meet its obligations under said contract of Sep-
tember 3, 1968 . . . and without any intent or purpose
to evade the provisions of G. L. c. 44, § 31."

We face another in a long line of cases where the pow-
ers and duties of the school committee under G. L. c. 71
are challenged as being in conflict with certain provi-
sions of the Municipal Finance Act, G. L. c. 44.  See *Casey*
v. *Everett*, 330 Mass. 220, 222, and cases cited.

The defendants base their argument on two sections of

---

[2] "Whereas, the Committee and the Association entered into a collec-
tive bargaining Agreement, effective September 3, 1968, with respect
to the salaries, hours of work and other conditions of employment of
the Professional Employees represented by the Association; and

"Whereas, sufficient funds were not appropriated by the Town of
Norton to pay the compensation which under the terms of said Agree-
ment it was agreed would be paid by the Committee to said Profes-
sional Employees for the *work year* beginning September 3, 1968; and

"Whereas, because of the inability of the Committee to pay said
compensation as agreed upon the Committee and the Association en-
tered into further bargaining with respect to the compensation to be
paid said Professional Employees for said work year; and

"Whereas, as a result of said bargaining the Committee and the
Association have agreed to make certain changes in the provisions of
said Agreement" (emphasis supplied).

G. L. c. 44. Section 31, as amended by St. 1955, c. 259, provides, in pertinent part, that "[n]o department financed by municipal revenue . . . shall incur a liability in excess of the appropriation made for the use of such department . . . ." ( It is uncontested that the 1968 school appropriation was insufficient to pay the salaries of the professional employees as agreed upon by the school committee and the teachers association for the period September 2, 1968, to December 31, 1968.)

Section 64, inserted by St. 1941, c. 179, provides: "Any town having unpaid bills of previous years which may be legally unenforceable due to the insufficiency of an appropriation in the year in which such bills were incurred, may, at an annual meeting by a four fifths vote, or at a special meeting by a nine tenths vote, of the voters present and voting at a meeting duly called, appropriate money to pay such bills . . . ." As noted above, the annual town meeting on March 4, 1969, rejected the school committee's request under this section to pay the teachers' salary increase for the period September 1, 1968 (*sic*) to December 31, 1968.

The defendants argue that the school committee, in the face of the town's rejection of its request, should not be allowed to achieve the same result indirectly by an increase in the 1969 salary level sufficient to compensate teachers for what they lost in 1968. It is further argued that the school committee in 1968 was prohibited from entering into a contract increasing salaries in excess of the amount appropriated because of G. L. c. 44, § 31. Picking up the increase in the form of a higher 1969 salary schedule, according to the defendants, constitutes a mere gratuity and an invalid action. The defendants further argue that this was, in substance, the payment of a bill for salaries incurred in a prior year without compliance with G. L. c. 44, § 64.

We held in *Callahan* v. *Woburn*, 306 Mass. 265, that the school committee could bind the city by contracts of employment with teachers in excess of appropriations available at the time the contracts were made. Before us

is a case distinguishable from the *Callahan* case since in this instance there was no discrepancy between the amount appropriated by the town for the schools for 1968 and the amount requested by the school committee. Yet as indicated in the preamble to the March 26 amendment quoted above in footnote 2, the higher salaries were provided for by this amendment in recognition that the teachers were required to accept lower salaries in the latter part of 1968 than they contracted for.

It does not follow necessarily that the increases for 1969 were gifts of what could not have legally been paid to the teachers in 1968. It is significant that only those teachers who actually worked in 1969 received the increase. This situation is to be contrasted with *Whittaker* v. *Salem,* 216 Mass. 483, 485. There a school committee's grant to a principal of a year's leave of absence at one half his regular salary was held invalid as a "pure gratuity." This was held notwithstanding that the principal in question had overworked during the previous year and endangered his health. On the other hand, in *Averell* v. *Newburyport,* 241 Mass. 333, 335, we said in upholding the school committee provision for paid sick leave, "Although the rule increasing the possible length of absence without loss of pay was adopted after the salaries for the year had been fixed by vote of the committee, that is not decisive against the plaintiff. *In principle it stands on the same footing as an increase of salary during the period of a contract. It was not a mere gratuity. It may have been regarded as an additional incentive to superior work*" (emphasis supplied). See *Attorney Gen.* v. *Woburn,* 317 Mass. 465, 467; *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105, 107. We think the statement in the *Averell* case is sound.

We are further supported in our determination by the unwavering line of cases enforcing, when possible, "the supremacy of the school committee's authority in matters pertaining to the management of the public schools." *Casey* v. *Everett,* 330 Mass. 220, 222, and cases cited. In particular, we have often held that the school committee

has complete power to fix the compensation of teachers. See *Leonard* v. *School Comm. of Springfield,* 241 Mass. 325, 329–330; *Watt* v. *Chelmsford,* 323 Mass. 697, 700; *Lynch* v. *Fall River,* 336 Mass. 558, 559; *Collins* v. *Boston,* 338 Mass. 704, 707. The only question is the sufficiency of funds available to the school committee. *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105, 108. Here it was uncontested that the total appropriation for the 1969 school budget was sufficient to cover the increases due under the amendment.

The problem of *Callahan* v. *Woburn,* 306 Mass. 265, came here in part because the contracts with the teachers did not run from year to year concurrently with the town's successive fiscal years. We held in the *Callahan* case, at page 268, that such contracts were nonetheless proper.

Furthermore, it cannot be denied that if the original agreement of September 3, 1968, had contained those salary schedules as finally provided for by the March 26, 1969, amendment (i.e., with the increases not coming into effect until 1969), there would be no question as to its validity. The impact on the town would have been the same. See *Kerrigan* v. *Boston, ante,* 24. All circumstances considered, the agreement with the March 26 amendment is valid and enforceable. There was no error.

*Decree affirmed.*