FRANK MENDES & others *vs.* CITY OF TAUNTON
& another
(and two companion cases[1]).

Bristol.   March 15, April 9, 1973. — September 27, 1973.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Municipal Corporations,* Municipal finance, Collective bargaining.
*Labor.*

The provision of G. L. c. 44, § 33A, that "no [city] ordinance providing
for an increase in salaries or wages . . . shall be enacted . . . unless it is
to be operative for more than three months during the financial year
in which it is passed," requires that both the ordinance and all such
increases provided therein must be in effect for more than three
months in such financial year, so that where an ordinance was
adopted more than three months before the end of a financial year
providing increases for that year and further increases effective in the
following year, the increases for the following year were invalid under
§ 33A [487-490]; and in view of c. 149, § 178I, there was no merit in a
contention that the city was obligated to pay the increases for the
following year because they were called for in a collective bargaining
agreement made by the city with certain employees under c. 149,
§§ 178G-178N [490-491]. GOODMAN, J., dissenting.

THREE BILLS IN EQUITY filed in the Superior Court on
April 13, 1972, April 25, 1972, and December 21, 1972.
The first two suits were heard by *Linscott,* J., and the
third by *Mason, J.*
*Mark G. Kaplan* for Joseph Rogers & others.

---

[1] Joseph Rogers & others *vs.* City of Taunton & others; City of Taunton &
another *vs.* Labor Relations Commission & others.

*Robert B. McCormack (Alan Katz* with him) for Labor Relations Commission.

*Orlando F. deAbreu,* City Solicitor, for the city of Taunton & others.

*E. David Wanger* for Frank Mendes & others.

HALE, C.J.    These three cases include two bills for declaratory and other relief: one brought by members of the fire department of the city of Taunton (the firemen's case), and one brought by members of the police department of the city of Taunton (the policemen's case). The city of Taunton and its mayor are defendants in each of these cases.[2] The third case is a bill brought by the city and its mayor for review (G. L. c. 30A, § 14) of a decision of the Labor Relations Commission (Commission) and was reported to this court to be argued with the policemen's case, as both cases arise out of the same controversy.[3]

All three cases arise out of a refusal by the city of Taunton to pay increases in wages for the year 1972 which were called for by separate collective bargaining agreements executed in 1971 by the city of Taunton and Local 1391, International Association of Firefighters, AFL-CIO, and by the city and the Taunton branch of the Massachusetts Police Association. The firemen's case and the policemen's case were each submitted to the Superior Court on a case stated and were argued together. A decree was entered in each declaring, among other things, that the collective bargaining agreements were "in direct conflict with G. L. c. 44, § 33A,[4] insofar as they relate to wages," and that

---

[2] The policemen's case has also joined members of the municipal council as defendants.

[3] The plaintiffs in the policemen's case (together with the Commission) were made defendants in the third case.

[4] Section 33A, as amended through St. 1960, c. 301, read: "The annual budget shall include sums sufficient to pay the salaries of officers and employees fixed by law or by ordinance. Notwithstanding any contrary provision of any city charter, no ordinance providing for an increase in the salaries or wages of municipal officers or employees shall be enacted except by a two thirds vote of the city council, *nor unless it is to be operative for more than three months during the financial year in which it is passed;* provided, however, that in any year other than a regular municipal election year, ordinances may be enacted by a two thirds vote

"[t]he city ordinances of 1971, purporting to implement the collective bargaining contracts for increased wages for policemen and firemen effective January 1, 1972, are invalid insofar as they relate to said wages." The firemen and policemen appealed from the decrees.

The following facts appear from the case stated in the firemen's case. On August 24, 1971, the then mayor of the city of Taunton and Local 1391 of the International Association of Firefighters, AFL-CIO, the collective bargaining representative of the city's firemen, executed a contract intended to take effect as of January 1, 1971, and to terminate December 31, 1972. It contained detailed provisions governing wages, hours, and working conditions. The parties agreed to new wage schedules for the years 1971 and 1972, which reflected wage increases for 1971 over the schedule theretofore in effect and additional increases for 1972. On September 18, 1971, a supplemental appropriation was passed to fund the 1971 increases. On September 22, 1971, an ordinance was adopted by a two-thirds vote of the municipal council which purported to replace the lower wage schedule previously in effect with the new wage schedules for 1971 and 1972 and to repeal "all ordinances and parts thereof inconsistent [t]herewith." The 1971 increases were paid that year retroactive to January 1. The 1972 budget submitted by the new mayor, a defendant in this case (1971 was an election year), included "inadvertently" an appropriation for firemen's wages sufficient to implement the 1972 wage increases. The budget was passed by the council and approved by the mayor. The city refused to pay the 1972 increases; its contention, accepted by the trial judge, is that neither the collective bargaining agreement nor the September, 1971, ordinance could provide

during the months of November and December providing for an increase in the salaries and wages of officers and employees, to become effective as of January first of the next ensuing year. No new position shall be created or increase in rate made by ordinance, vote or appointment during the financial year subsequent to the submission of the annual budget unless provision therefor has been made by means of a supplemental appropriation . . ." (emphasis supplied). This section has been further amended by St. 1969, c. 849, § 61, which deleted the election year proviso. This change became effective July 1, 1973. See St. 1971, c. 766, § 29.

Mendes *v.* Taunton.

increases for the following year which would comply with G. L. c. 44, § 33A.

The facts in the policemen's case are not significantly different from those in the firemen's case. The collective bargaining agreement executed by the city of Taunton and the Taunton branch of the Massachusetts Police Association was also to cover the two-year period commencing January 1, 1971, and provided on its face for wage increases for the year 1971 and additional increases for 1972. It was executed on August 24, 1971 (the date the agreement in the firemen's case was executed), and on that date an ordinance was passed which purported to incorporate the 1971 and 1972 increases and to repeal inconsistent ordinances. On September 18, 1971, a supplemental appropriation to fund the 1971 increases was voted, and those increases were paid retroactive to January 1, 1971. In 1972 the new mayor refused to include the 1972 increases in the budget, and the mayor and the city have since refused to implement those increases.[5]

1. General Laws c. 44, § 33A, as amended through St. 1960, § 301, provided in pertinent part that "no ordinance providing for an increase in the salaries or wages of municipal officers or employees shall be enacted . . . unless it is to be operative for more than three months during the financial year in which it is passed. . . ." The present dispute is as to the validity of those portions of the ordinances adopted in 1971 which purported to grant additional pay increases which were not to go into effect until January 1, 1972.

We observe that the judicial interpretation of § 33A leaves unclear whether it is the "increase in the salaries" or the "ordinance" which must be "operative" for more than three months. See *Clements* v. *Treasurer of Cambridge,* 324 Mass. 73, 74 (1949) ("The ordinance was obnoxious to that statute, because the increases were not to be operative

---

[5] The plaintiffs in the policemen's case have filed a "Motion to Augment the Record on Appeal." By this means the plaintiffs seek to have placed before us facts not in existence at the time the trial judge rendered his decision. The motion is denied.

during the year 1948"); *Booker* v. *Woburn,* 325 Mass. 334, 336 (1950) (". . . the increase was not to be operative for more than three months . . . "); *Foley* v. *Lawrence,* 336 Mass. 60, 63 (1957) (". . . the ordinance . . . could not have been operative for more than three months in the then current fiscal year"); *Brucato* v. *Lawrence,* 338 Mass. 612, 616-618 (1959); *Doherty* v. *Woburn,* 345 Mass. 523, 526 (1963).

The purpose of the three-month requirement in § 33A is "to prevent city councils . . . from imposing in one year upon the taxpayers of later years the burden of salary increases not to take effect until these later years." *Brucato* v. *Lawrence, supra,* at 618. If § 33A required only that a portion of a pay increase be "operative" for more than three months in the year of the ordinance's passage, then pay increase ordinances could surely derogate from the policy of promoting fiscal responsibility in municipal government by providing for insignificant salary increases in the year of passage and substantial salary increases in following years. To achieve the statutory purpose, we construe the second sentence of § 33A to require that both the ordinance and all salary increases provided therein must be in effect for more than three months during the financial year in which the ordinance is passed. It follows that the additional increases which were not to take effect until 1972 and which were voted by the outgoing 1971 council were invalid.

2. The plaintiffs also argue that the collective bargaining agreements made pursuant to G. L. c. 149, §§ 178G-178N, nevertheless impose upon the defendants an obligation to pay the 1972 salary increases. We disagree. Nothing in c. 149 exempts a salary increase under a collective bargaining agreement from the requirements of G. L. c. 44, § 33A. To the contrary, c. 149, § 178I, provides that "[i]n the event that any part or provision of any such agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail so long as such conflict remains . . . ." We are of opinion that § 33A is such a "law" and that we are not here presented with a situation in which the Legislature has authorized a municipality to adopt a

new system of compensating its employees which is so inconsistent with the provisions of § 33A that the two provisions cannot stand. Cf. *Brucato* v. *Lawrence,* 338 Mass. 612, 618-619 (1959).

3. In the third case the Labor Relations Commission found that the mayor failed to bargain in good faith with the Taunton branch of the Massachusetts Police Association by reason of his having refused to submit a request for an appropriation funding the wage increases for 1972 included in the collective bargaining agreement with the policemen. The Commission ordered that the mayor, among other things, take whatever "steps may be necessary to fund and put into effect the wage increases agreed to in the collective bargaining agreement signed on August 24, 1971." The questions raised in the report are fully answered in our decision in the policemen's case.

Accordingly, in both the firemen's case and the policemen's case the decree of the Superior Court is affirmed. The case of City of Taunton & another v. Labor Relations Commission & others is remanded to the Superior Court for proceedings not inconsistent with this opinion.

*So ordered.*


This case was initially heard by a panel comprised of the Chief Justice and Justices Goodman and Grant and was thereafter submitted on the record and briefs to the other Justices, all of whom took part in this decision in accordance with the provisions of Rule 1:18 of this court.


GOODMAN, J. (dissenting). General Laws c. 149, § 178H, declares that "[e]mployees shall have, and be protected in the exercise of, the right . . . to bargain collectively . . . on questions of wages, hours and other conditions of employment . . . ." The provision is parallel to G. L. c. 150A, § 3,[1] guaranteeing the right to collective bargaining to employees in the private sector and implementing

---

[1] "Employees . . . shall have the right . . . to bargain collectively through representatives of their own choosing . . .."

the policy in G. L. c. 150A, § 1 (third unnumbered para-graph).[2] This suggests a similar flexibility in negotiating wage patterns in the public sector and an intent to stabilize labor relations by contract — at least for a period up to three years, the maximum duration of a collective bargain-ing agreement with municipal employees permitted by G. L. c. 149, § 178I. See *Kerrigan* v. *Boston,* 361 Mass. 24, 27-28 (1972), interpreting § 178I in the light of the National Labor Relations Act (49 Stat. 449, as amended, 29 U. S. C. §§ 151 et seq.) and the State Labor Relations Law (G. L. c. 150A, §§ 1 et seq.).[3] Section 178I provides that "the municipal employer shall be represented by the chief executive officer . . . or his designated representative" and that the parties if they reach an agreement "shall execute a written contract incorporating any agreement reached." The Legislature was, of course, aware of the complex body of law governing municipal wages and contracts and municipal finance generally and accordingly provided that "[i]n the event that any part or provision of any such agreement is in conflict with any law, ordinance, or by-law, such law, ordinance, or by-law shall prevail" but only "so long as such conflict remains." Section 178I also provides that "[i]f funds are necessary to implement such written agreement, a request for the necessary appropriation shall be submitted to the legislative body [and further] [i]f such request is rejected, the matter shall be returned to the parties for further bargaining."

---

[2] The stated purposes of this provision are ". . . [to] remov[e] certain recognized sources of industrial strife and unrest, . . . [to] encourag[e] practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours or other working conditions, and . . . [to] restor[e] equality of bargaining power between employers and employees."

[3] For a view emphasizing the differences between private and public sector collective bargaining, see Wellington and Winter, The Limits of Collective Bargaining in Public Employment, 78 Yale L. J. 1107, and Wellington and Winter, Structuring Collective Bargaining In Public Employment, 79 Yale L. J. 805. See also 1971 House Doc. No. 5235, Second Interim Report of the Special Legislative Study Commission on Collective Bargaining, p. 14; Rehmus, Con-straints on Local Governments In Public Employee Bargaining, 67 Mich. L. Rev. 919.

The majority opinion accepts the contention of the city of Taunton that, by reason of G. L. c. 44, § 33A, an ordinance cannot validly implement a two-year collective bargaining agreement which provides for increases in wages in both years — at least as to the increase for the financial year following the passage of the ordinance. The specific proviso relied on is "[N]o ordinance providing for an increase in the salaries or wages of municipal officers or employees shall be enacted . . . unless it is to be operative for more than three months during the financial year in which it is passed" (see emphasized part of fn. 4 of the majority opinion, hereafter referred to as the three-month provision).

The majority holds that the wage increases for 1972 were invalid because they were not "operative" during 1971, the financial year in which the ordinances providing for them were passed. With all respect, it seems to me that this provision, as a matter of grammatical construction, reads to require that the *ordinance* rather than the increase must be "operative" for more than three months during the financial year in which it is passed, and that the ordinances passed in August and September, 1971, to implement the policemen and firemen contracts were operative as the increases for that year. Thus it cannot be said of these ordinances, as of the city council's increase in *Brucato* v. *Lawrence,* 338 Mass. 612, 618 (1959), that it had "*no* effect by way of expenditure in that year"[4] (emphasis supplied). The 1971 ordinances funded by supplemental appropriations for that year are consistent with the three-month provision of § 33A "to make each council take immediate responsibility in the year of council action for *some* of the fiscal and tax burden of any salary increases voted by it" (emphasis supplied). *Brucato* v. *Lawrence, supra.* Similarly in *Hackett* v. *Worcester,* 346 Mass. 634, 637 (1964), it was contended that the proviso in § 33A (see majority

---

[4] Also in both *Clements* v. *Treasurer of Cambridge,* 324 Mass. 73, 74 (1949), and *Booker* v. *Woburn,* 325 Mass. 334-336 (1950), the increases had no effect during the years in which the ordinances were respectively passed. There was therefore no need in those cases to distinguish between the operation of the ordinance and the operation of the increase.

opinion, fn. 4) that "ordinances may be enacted . . . during
the months of November and December [in a non-election
year] providing for an increase in the salaries and
wages . . . to become *effective as of January first* of the next
ensuing year" (emphasis supplied) prohibited increases
which went into effect by stages during the ensuing year.
The Supreme Judicial Court held that "the ordinance as a
whole" became effective on January 1, although none of the
step increases began on that date.

This construction of the three-month provision harmo-
nizes the municipal finance law with the collective bargain-
ing provisions of G. L. c. 149, § 178I, which permits three-
year contracts. On the construction adopted by the major-
ity, municipalities in which wage scales are established by
ordinance are barred from presently negotiating binding
increases which are not to take effect until the second or
third year of a contract period. Either the parties must
negotiate wages every year or attempt somehow to arrive at
a flat increase for two or three years which would average
out so that neither party would be disadvantaged. This
would be a gamble which responsible negotiators might
well be reluctant to take. Wages are ordinarily the major
element in the negotiation of a labor contract and the hope
for such stability in this volatile area[5] as might result from
collective bargaining agreements for two or three years
could well be frustrated.[6]

Indeed, the interpretation accepted by the majority
would appear to make the three-month provision inconsist-
ent with the provisions in G. L. c. 41, § 108A, permitting a
"city by ordinance" to establish a salary plan to "provide

---

[5] See 1971 House Doc. No. 5235, Second Interim Report of the Special
Legislative Study Commission on Collective Bargaining, at page 9: "When
200,000 different workers break State anti-strike laws in 251 concerted actions in
one year (1968), there can remain little doubt that the problem is here and now."

[6] It has been suggested that "[t]he difficulties [of coordinating the budget-
making process with collective bargaining] can be minimized by . . . negotiating
collective bargaining contracts for longer terms than are currently settled upon."
Rehmus, Constraints on Local Governments In Public Employee Bargaining, 67
Mich. L. Rev. 919, 925.

for the attainment of . . . maximum salaries by periodical step-rate increases based on length of service." The three-month provision in G. L. c. 44, § 33A, has been in effect since 1947 (St. 1947, c. 298, § 1) and has been reconsidered from time to time.[8] I have found nothing to indicate that § 33A has ever been thought to affect G. L. c. 41, § 108A, which was also originally enacted in 1947 (St. 1947, c. 540, § 2) and permitted a city as part of a salary plan "to establish minimum and maximum salaries."[9] There would seem to be no real distinction between an ordinance providing for increases in subsequent years in accordance with a pattern set by a salary plan under G. L. c. 41, § 108A, and an ordinance providing for increases for subsequent years in accordance with a pattern set by an executed collective bargaining agreement made pursuant to G. L. c. 149, § 178I. It would be anomalous to permit less flexibility in collective bargaining agreements than in salary plans.

The conclusion of this dissent is also supported by the contract provisions relating to municipalities. These provisions would seem to be at least as relevant to the establishment of wages pursuant to G. L. c. 149, § 178I, since that provision contemplates the bilateral negotiation of collective bargaining contracts rather than the unilateral action implicit in the establishment of wages by ordinance. The municipal contract provisions also permit contracts extending over a period of years. See, *e.g.,* G. L. c. 40, § 4 (unnumbered paragraphs 1st-4th, 7th-9th, 11th, 14th-21st). And this has not been thought to be inconsistent with G. L. c. 44, § 31 ("No department . . . shall incur a liability in excess of the appropriation made for the use of such department"). "There is no requirement under such a contract that the whole expense, for all the years in which

---

[7] Statute 1955, c. 358, excepted from this provision wage increases in non-election years made in December, and St. 1960, c. 301, added November. See 1955 Senate Doc. No. 675, Report of the Special Commission on Budgetary Procedure in Cities. See also St. 1950, c. 370, and St. 1969, c. 849, § 61.

[8] The more explicit present language was enacted by St. 1948, c. 351, which rewrote the section.

service is to be provided . . ., be appropriated at the inception of the contract." *Salisbury Water Supply Co.* v. *Salisbury,* 341 Mass. 42, 49 (1960), and cases cited. See *Callahan* v. *Woburn,* 306 Mass. 265 (1940); *Norton Teachers Assn.* v. *Norton,* 361 Mass. 150, 155 (1972). See also *Lynn Redevelopment Authy.* v. *Lynn,* 360 Mass. 503, 506 (1971). Cf. *Ellis* v. *Board of Selectmen of Barnstable,* 361 Mass. 794, 800 (1972).

The majority interpretation appears to be based primarily on the fear that ordinances may be enacted to provide token increases in the year of passage and substantial increases in following years. "We are not faced with that issue in this case, because there is no suggestion that the . . . [ordinances are] not bona fide." *Belfer* v. *Building Commr. of Boston,* 363 Mass. 439, 444 (1973). This is not a case where "a collective bargaining agreement is used as a method of evading a well-defined statutory policy." *Kerrigan* v. *Boston,* 361 Mass. 24, 31, fn. 3 (1972). "While this court sits," I am confident that it can deal adequately with any such evasion. I would further observe that we are here interpreting not a criminal statute in which we are concerned with aberrant conduct, evasive in its essence (see Model Penal Code Proposed Official Draft, § 1.02 [1962]) but with a civil statute, part of an integrated whole, designed to guide the ordinary management of municipal affairs by officials presumably acting in good faith. A preoccupation with marginal conduct in this context distorts the entire statutory scheme.

The majority does not reach the defendants' contention that the 1972 increases were also invalid because there was no supplemental appropriation made for them. This contention is based on the provision that "[n]o . . . increase in rate [shall be] made by ordinance [or] vote . . . during the financial year subsequent to the submission of the annual budget unless provision therefor has been made by means of a supplemental appropriation" (the supplemental appropriation provision). The answer to this contention is found in *Doherty* v. *Woburn,* 345 Mass. 523, 526-527 (1963), in which the Supreme Judicial Court had before it

an ordinance passed December 30, 1958 (a non-election year; see majority opinion, fn. 4, following the part emphasized) increasing salaries in 1959. The court held that the ordinance was valid because "[t]he increased salaries provided by each ordinance [including the one passed on December 30, 1958] were to be paid from appropriations of the 1959 financial year and action on each ordinance was completed prior to the submission of the 1959 budget. There was no occasion for any supplemental appropriation. See *Brucato* v. *Lawrence,* 338 Mass. 612, 617." See also *Rock* v. *Pittsfield,* 316 Mass. 348, 349 (1944), in which the court said of substantially the same provision:[9] "After the submission of the annual budget, increases in salaries are forbidden unless provision therefor is made by means of a supplemental budget. G. L. (Ter. Ed.) c. 44, § 33A. . . . But we know of no statute that restricts the power of the city council of Pittsfield to enact an ordinance in one year making an increase in salary to take effect at the beginning of the succeeding year." See *James* v. *Mayor of New Bedford,* 319 Mass. 74, 77 (1946); *Clements* v. *Treasurer of Cambridge,* 324 Mass. 73, 74 (1949). See also *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105, 108 (1971).

In the policemen's case the city of Taunton makes the additional argument (with which the majority also need not deal) based on the fact that the supplemental appropriation was made on September 18, 1971, subsequent to the passage of the ordinance on August 24, 1971. (In the firemen's case the supplemental appropriation, also passed on September 18, 1971, preceded the ordinance incorporating the increases and passed on September 22, 1971.) The city of Taunton argues that the ordinance was in violation of the supplemental appropriation provision of G. L. c. 44, § 33A, as to the 1971 increases as well as to the

_____

[9] The provision considered by the court read: "The budget shall include sums sufficient to pay the salaries of officials fixed by law or by ordinance, but no new position shall be created or increase in rate made during the financial year subsequent to the submission of the annual budget, unless provision therefor is made by means of a supplemental budget." The difference between the phrase "is made" and the present phrase "has been made" (see St. 1943, c. 62) is stylistic and immaterial, particularly in view of the cases cited in this connection.

1972 increases and therefore totally inoperative in 1971. However, that provision, unlike the three-month provision, requires a supplemental appropriation to effect the *increase,* not to validate the ordinance. Since that provision does not prohibit wage increases passed by ordinance from being effectuated by appropriations made the following year, I see no reason why it should prohibit wage increases from being effectuated by appropriations made subsequently in the same year. See *Rock* v. *Pittsfield,* 316 Mass. 348, 349 (1945); *James* v. *Mayor of New Bedford,* 319 Mass. 74, 77 (1946); *Clements* v. *Treasurer of Cambridge,* 324 Mass. 73, 74 (1949). See also *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105, 108 (1971). The adoption of the ordinance "did not constitute 'expenditure of public money' or the incurring of 'liability' " (*Doherty* v. *Woburn,* 345 Mass. 523, 527-528 [1963]) until the supplemental appropriation was made. Since a "supplemental appropriation was passed by the city council to meet the salary increase" (cf. *Foley* v. *Lawrence,* 336 Mass. 60, 62 [1957]) on September 18, 1971, the ordinance effecting the policemen's increase, like the one effecting the firemen's increase, was operative for at least three months during that year.

Thus I submit that the collective bargaining agreements were not in conflict with any law, and that the conflict with the ordinances setting lower salaries in effect prior to the 1971 ordinances prevailed only "so long as such conflict remain[ed]" (G. L. c. 149, § 178I), *i.e.,* until the repeal of the earlier ordinances which was accomplished by the 1971 ordinances. As the Supreme Judicial Court said in *Rock* v. *Pittsfield,* 316 Mass. 348, 350-351 (1944), "We think that the ordinance was valid, and that the salary increase took effect on January 1 [1972]. . . . It then became the duty of the mayor to provide in the budget for payment of the salaries as increased by the ordinance. G. L. (Ter. Ed.) c. 44, § 33A. . . .[10] The duty to provide for the increased

[10] Section 33A requires that "[t]he annual budget shall include sums sufficient to pay the salaries of officers and employees fixed by law or by ordinance" (see first sentence of fn. 4 of the majority opinion).

salaries arises upon general principles, and not exclusively upon the terms of § 33A." See *Doherty* v. *Woburn,* 345 Mass. 523, 528 (1963); *Barnard* v. *Lynn,* 295 Mass. 144, 147 (1936); Rhyne, Municipal Law, § 8-18.

I would order a decree entered declaring that the collective bargaining agreements and the ordinances are both valid; that the 1972 wage schedules provided in the collective bargaining agreements and ordinances are binding on the city of Taunton; and that the policemen and firemen covered by those agreements and ordinances are owed compensation based on such wage schedules with interest. *Doherty* v. *Woburn, supra,* at 528.