FRANK MENDES & others *vs.* CITY OF TAUNTON
& another
(and three companion cases[1]).

Bristol.  March 5, 1974. — August 2, 1974.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Municipal Corporations,* Municipal finance, Collective bargaining. *Labor.*

Ordinances adopted by a two-thirds vote of a city council in August and September of 1971, together with supplemental appropriations, providing for wage increases for certain city employees to be effective

---

[1] Joseph Rogers & others *vs.* City of Taunton & others; City of Taunton & another *vs.* Labor Relations Commission & others; Frank Mendes & others *vs.* City of Taunton & another.

throughout 1971 and 1972 were not invalid as to 1972 under the provision of G. L. c. 44, § 33A, that no ordinance providing for a wage increase "shall be enacted ... unless it is to be operative for more than three months during the financial year in which it is passed"; the three month requirement in the statute did not refer to the 1972 increases. [113-116]

Where a city council, after submission of the annual budget in a certain year, but more than three months before the end of that year, adopted an ordinance by a two thirds vote increasing police wages effective throughout that year and made a supplemental appropriation to fund the increase, the ordinance was valid under G. L. c. 44, § 33A, even though the ordinance was adopted before the supplemental appropriation was made. [113-116]

Upon the adoption of a valid city ordinance increasing certain employees' wages for the ensuing year, it became the duty of the mayor to include in the annual budget submitted to the council for that year an amount sufficient to fund the increases, and it became the duty of the city to pay them. [116-117]

Where, following the making of a collective bargaining contract with a city providing for wage increases for certain employees for the ensuing year, a new mayor in the ensuing year, in violation of a provision of the contract and of G. L. c. 149, § 178I, refused to submit to the city council a request for an appropriation to fund the increases, his refusal properly could be found by the Labor Relations Commission to constitute a prohibited practice within § 178L. [117-119]

FOUR BILLS IN EQUITY filed in the Superior Court on April 13, 1972, April 25, 1972, September 20, 1972, and December 21, 1972, respectively.

The first two suits were heard by *Linscott,* J., the third by *Coddaire,* J., and the fourth by *Mason,* J.

*Emanuel David Wanger* for Frank Mendes & others.

*Mark G. Kaplan* for Joseph Rogers & others.

*Joellen D'Esti Bogdasarian (Garry J. Wooters & Alexander Macmillan* with her) for State Labor Relations Commission.

*Orlando F. de Abreu,* City Solicitor, for the city of Taunton & another.

QUIRICO, J.    These four cases all arise out of a refusal by the city of Taunton to pay salary increases to members of the city's fire department and police department for the year 1972; the increases were agreed on in separate collec-

tive bargaining contracts (the contract or contracts) entered into in 1971 by the city and Local 1391, International Association of Firefighters, AFL-CIO (Local 1391), and by the city and the Taunton branch of the Massachusetts Police Association (the association). What is essentially at issue in each of the cases is the interrelation between one section of the municipal finance law, G. L. c. 44, § 33A,[2] and the municipal employees collective bargaining law, G. L. c. 149, §§ 178G-178N.[3]

Three of the cases are bills for declaratory relief, two brought by members and officers of Local 1391 on behalf of all members of the fire department (the firemen's cases) and one brought by officers of the association on behalf of all members of the police department (the policemen's case), against the city and its mayor.[4] The other case is a bill for review brought by the city and the mayor pursuant to G. L. c. 30A, § 14, of a decision of the Labor Relations Commission (commission). The four cases are before us on our allowance of applications for further review from the Appeals Court (G. L. c. 211A, § 11; S.J.C. Rule 3:24, § 7,

---

[2] Section 33A, as amended through St. 1960, c. 301, reads: "The annual budget shall include sums sufficient to pay the salaries of officers and employees fixed by law or by ordinance. Notwithstanding any contrary provision of any city charter, no ordinance providing for an increase in the salaries or wages of municipal officers or employees shall be enacted except by a two thirds vote of the city council, nor unless it is to be operative for more than three months during the financial year in which it is passed; provided, however, that in any year other than a regular municipal election year, ordinances may be enacted by a two thirds vote during the months of November and December providing for an increase in the salaries and wages of officers and employees, to become effective as of January first of the next ensuing year. *No new position shall be created or increase in rate made by ordinance, vote or appointment during the financial year subsequent to the submission of the annual budget unless provision therefor has been made by means of a supplemental appropriation . . .*" (emphasis supplied). This section has been further amended by St. 1969, c. 849, § 61, which deleted the election year proviso. This change became effective July 1, 1973. See St. 1971, c. 766, § 29.

[3] This is the third time in a little over a month that we have considered the interrelation between G. L. c. 149, §§ 178G-178N, and other statutes touching different aspects of municipal governance. See *Dedham* v. *Labor Relations Commn.* 365 Mass. 392 (1974); *Chief of Police of Westford* v. *Westford*, 365 Mass. 526 (1974). General Laws c. 149, §§ 178G-178N, has now been repealed and replaced by a new public employees collective bargaining law, G. L. c. 150E, enacted by St. 1973, c. 1078, § 2, effective July 1, 1974.

[4] Members of the city's municipal council (the council) were also named as defendants in the case brought by the policemen.

359 Mass. 838 [1972]),[5] which upheld the position of the city and the mayor in all but one of the cases. We will consider the firemen's first case and the policemen's case together, and thereafter the commission's case and the firemen's second case.

## I. THE FIREMEN'S FIRST CASE AND THE POLICEMEN'S CASE.

By their bills both the firemen and the policemen sought determinations that the 1972 salary provisions in their contracts were valid and binding on the city and its mayor and that, pursuant to the contracts and certain ordinances passed and approved in 1971, the defendants were required to pay the 1972 salary increases beginning as of January 1, 1972. The bills were submitted and argued together in the Superior Court and a decree was entered in each case denying relief to the plaintiffs; the Appeals Court rendered a decision affirming the final decrees on their appeals. *Mendes* v. *Taunton,* 1 Mass. App. Ct. 486 (1973).[6]

The facts of the two cases are set forth in the Appeals Court's opinion [7] but it will be helpful for the purposes of our review to repeat the following. The firemen's and the policemen's contracts with increased wage schedules for 1971 and 1972 were executed on August 24, 1971, to be in effect from January 1, 1971, through December 31, 1972. In August and September, 1971 (which was an election year for the city), the council approved two supplemental appropriations to fund the contracted-for 1971 wage increases and adopted, by a two-thirds vote in each instance,

---

[5] Also before us is a motion made originally to the Appeals Court by the policemen to augment the record on appeal in their case by adding certain documents. Since the documents would not affect the result in that case we do not act on the motion.

[6] The Appeals Court's decision also covered the commission's case. See part II of this opinion.

[7] 1 Mass. App. Ct. 488-489 (1973).

two ordinances which purported to incorporate the 1971 and 1972 increases for both groups of employees and to repeal inconsistent ordinances. The firemen and policemen received their wage increases for 1971. They did not receive the increases in 1972 because the city and its newly elected mayor refused in the firemen's case to pay the increase notwithstanding a provision therefor in the annual budget, and refused in the policemen's case to implement those increases by requesting the necessary appropriations. The city's and the mayor's contention, which was accepted by the trial judge and a majority of the Appeals Court,[8] is that both the contracts and the 1971 ordinances were invalid as to the 1972 wage increases because they were in direct conflict with G. L. c. 44, § 33A. We disagree.

1. The Appeals Court construed the requirement of G. L. c. 44, § 33A, that no ordinance providing for a wage increase for municipal officers or employees is to be enacted "unless it is to be operative for more than three months during the financial year in which it is passed" (the three-month requirement; see fn. 2, *supra,* for the full text of § 33A) to mean that *both* the ordinance *and all* wage increases provided for therein must be in effect for this three-month period. In the view of the majority· of that court, this construction best satisfied the statutory purpose of fiscal responsibility embodied in the three-month requirement. Since obviously the 1972 wage increases would not take effect in 1971, the majority held that those parts of the contracts and of the 1971 ordinances relating to the 1972 increases were invalid. As Justice Goodman points out in his dissenting opinion, however, this construction of § 33A would render virtually ineffective the important provision in G. L. c. 149, § 178I, permitting three-year collective bargaining contracts for municipal employees.[9] Further-

---

[8] See 1 Mass. App. Ct. at 489-491 (1973).

[9] As Justice Goodman states, "On the construction adopted by the majority, municipalities in which wage scales are established by ordinance are barred from presently negotiating binding increases which are not to take effect until the second or third year of a contract period. Either the parties must negotiate wages every year or attempt somehow to arrive at a flat increase for two or three years

more, as he also points out, the construction is not required by the language in which the three-month provision is framed. 1 Mass. App. Ct. at 493-494 (1973) (Goodman, J., dissenting).

We have remarked in the past on the importance of coördinating the municipal employees collective bargaining statute, G. L. c. 149, §§ 178G-178N, with earlier statutes dealing with municipal law in order to form, if possible, ". . . a harmonious whole consistent with the legislative purpose disclosed in the new act." *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 499 (1970), quoting from *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 614 (1957). We have also upheld, in other contexts, the validity of the provision in c. 149, § 178I, authorizing collective bargaining contracts of up to three years' duration. See, e.g., *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105, 106-107 (1971); *Kerrigan* v. *Boston,* 361 Mass. 24, 34 (1972); *Norton Teachers Assn.* v. *Norton,* 361 Mass. 150, 155 (1972). We believe, as did Justice Goodman, that the three-month requirement of G. L. c. 44, § 33A, can and should be construed in a manner which does not render invalid either the two-year contracts or the 1971 ordinances implementing the 1972 wage increases provided for in those contracts.

"[The three-month requirement] was obviously designed to prevent city councils . . . from imposing in one year upon the taxpayers of later years the burden of salary increases not to take effect until these later years . . . [and] to make each council take immediate responsibility in the year of council action for *some* of the fiscal and tax burden of any salary increases voted by it" (emphasis supplied). *Brucato* v. *Lawrence,* 338 Mass. 612, 618 (1959). Nothing in

which would average out so that neither party would be disadvantaged. This would be a gamble which responsible negotiators might well be reluctant to take. Wages are ordinarily the major element in the negotiation of a labor contract and the hope for such stability in this volatile area as might result from collective bargaining agreements for two or three years could well be frustrated." (Footnotes omitted.) 1 Mass. App. Ct. at 494 (1973).

this case conflicts with these purposes. The 1971 ordinances, enacted by the council and approved by the mayor more than three months before the end of the year, provided for certain wage increases to take effect in 1971 as well as 1972, and the council appropriated the necessary funds for the earlier year. Thus it was taking responsibility for "some of the fiscal . . . burden" of the increase. This is not a case like *Clements* v. *Treasurer of Cambridge,* 324 Mass. 73, 74 (1949); *Booker* v. *Woburn,* 325 Mass. 334, 336 (1950); or *Brucato* v. *Lawrence, supra,* where no part of the ordinances providing for salary increases was to go into effect until the following year. The statute speaks of the "ordinance" in relation to the requirement of being operative for more than three months, and it seems logical to construe that language to mean *only* the ordinance and *not* the ordinance *and all* of the increases provided for therein. In *Hackett* v. *Worcester,* 346 Mass. 634, 637 (1964), we construed in this manner the same words as they appeared in another clause of the same sentence in § 33A, and we will so construe them here. We therefore conclude that the three-month requirement in § 33A does not conflict with those portions of the 1971 ordinances providing for the 1972 wage increases.

2. The city claims in the policemen's case that, irrespective of the three-month requirement, the 1971 ordinance violated the additional provision in § 33A that "[n]o . . . increase in rate [shall be] made by ordinance, vote or appointment during the financial year subsequent to the submission of the annual budget unless provision therefor has been made by means of a supplemental appropriation." It argues that, since the 1971 ordinance was passed after the annual budget for that year was submitted and before the supplemental appropriation for the 1971 wage increases was approved, the ordinance is invalid. We do not agree. It seems clear that the purpose of the supplemental appropriation provision is to prevent a city council from making empty promises of salary increases that it cannot or will not keep. In this case, however, the council carried through with its promise by appropriating the funds for the

1971 increase in sufficient time for the increase to be
"operative for more than three months during the financial
year in which it . . . [was] passed [1971]." G. L. c. 44, § 33A.
The supplemental appropriation provision is not appli-
cable to the 1972 increases as the council obviously had no
authority to appropriate funds in 1971 to satisfy a 1972
budget item. See *Brucato* v. *Lawrence,* 338 Mass. 612, 617
(1959); *Fitchburg Teachers Assn.* v. *School Comm. of
Fitchburg,* 360 Mass. 105, 108 (1971).

3. In light of the construction we place on both provi-
sions in § 33A at issue here, we hold that those parts of the
1971 ordinances providing for increased wages to the
firemen and policemen in 1972 were valid. It therefore was
incumbent on the mayor, as the official responsible for
submitting the annual budget to the council pursuant to
G. L. c. 44, § 32, to include in the 1972 budget request "sums
sufficient" to cover those wage increases and incumbent on
the city to pay them. See c. 44, § 33A (first sentence); *Rock*
v. *Pittsfield,* 316 Mass. 348, 350-351 (1944); *James* v. *Mayor
of New Bedford,* 319 Mass. 74, 76 (1946); *Doherty* v.
*Woburn,* 345 Mass. 523, 528 (1963); *Hackett* v. *Worcester,*
346 Mass. 634, 637 (1964).

4. The firemen and policemen argue that, regardless of
the validity of the ordinances, the mayor was obligated
under the terms of the contracts themselves and of G. L.
c. 149, § 178I, to seek the necessary funds to implement the
wage increases. In view of our holding above, it is not
necessary to reach these contentions.[10]

We also need not consider the argument of the city that
these two bills for declaratory relief should be dismissed as
moot in light of ordinances passed in 1972 which reënacted
the 1972 wage increases.[11] The obligation already imposed

---

[10] We do consider them, however, in relation to the Labor Relations Commis-
sion's case.

[11] The ordinance providing for the firemen's wage increase is described in part
III of this opinion in relation to the firemen's second case and it appears the
ordinance providing for the policemen's increase was essentially identical.

on the mayor and the city to pay those increases by virtue of the 1971 ordinances was not affected by the later ordinances.


## II. THE LABOR RELATIONS COMMISSION'S CASE.


Our holding in the policemen's and firemen's cases with respect to the 1971 salary ordinances and appropriations disposes of the principal issue in the commission's case — whether or not the policemen are entitled to receive their negotiated wage increases for 1972. Nevertheless, we discuss the commission's case because it raises certain important questions about the meaning and effect of G. L. c. 149, §§ 178G-178N, questions which we believe will continue to arise under the new public employees collective bargaining law, G. L. c. 150E, effective July 1, 1974.

On April 4, 1972, the association filed a complaint of prohibited practices against the city and its then mayor, Rudolph H. DeSilva, based on the mayor's refusal to submit a request to the council for an appropriation to fund the policemen's 1972 wage increases. After hearing, the commission rendered a decision which found that this refusal constituted a refusal to bargain collectively in good faith in violation of G. L. c. 149, § 178L (4). It ordered the mayor to take the necessary steps to fund the wage increases.

The city and the mayor thereafter filed in the Superior Court the bill for review at issue here. It was transferred to the Appeals Court for argument with the firemen's and policemen's cases. *Mendes* v. *Taunton,* 1 Mass. App. Ct. 486 (1973). The Appeals Court treated the commission's case in summary fashion at the end of its opinion and remanded the case to the Superior Court for proceedings not inconsistent therewith. *Id.* at 491. We do not agree with this disposition of the commission's case.

In its decision the commission concluded that by refusing to submit the appropriation request to fund the 1972 wage increases the mayor violated explicit provisions of the contract and of G. L. c. 149, § 178I, which required him to make such a submission entirely apart from and independent of the 1971 salary ordinance. We believe this conclusion is correct. There is no suggestion in the record that the contract was not validly negotiated or executed. The fact that the execution on behalf of the city was performed by Mayor DeSilva's predecessor in office is irrelevant, as he did so in his capacity as "chief executive officer," designated by statute as the official bargaining representative of the city. See § 178I (second sentence). The contract continued to be binding on both the city and the new mayor. Article XXXVI of the contract explicitly required "[t]he Mayor of the City of Taunton . . . [to] promptly submit to the Municipal Council . . . appropriate requests for the appropriations, ordinances and legislation necessary to implement the terms of this Agreement." This language echoes that in § 178I: "If funds are necessary to implement such written [collective bargaining] agreement, a request for the necessary appropriation shall be submitted to the legislative body."[12] On taking office in January, 1972, Mayor DeSilva was clearly obligated to carry out the duties embodied in these contractual and statutory provisions by requesting the necessary appropriations to fund the 1972 increases,[13] although the council

[12] A similar requirement is imposed under the new G. L. c. 150E, § 7: "The employer shall submit to the appropriate legislative body within thirty days after the date on which the [collective bargaining] agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein."

[13] The Appeals Court was of the opinion that the contract provisions providing for the 1972 wage increases themselves conflicted with the requirements of G. L. c. 44, § 33A, and that through the operation of G. L. c. 149, § 178I, those requirements prevailed. Section 178I provides in part: "In the event that any part or provision of any . . . [collective bargaining] agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail so long as such conflict remains." Contrary to the Appeals Court, we fail to find any conflict between § 33A and the contract's wage provisions and therefore we do not believe the quoted portion of § 178I is relevant to this case. We also note that under G. L. c. 150E any conflicts between a collective bargaining agreement and G. L. c. 44, § 33A, are to be resolved in favor of the agreement. G. L. c. 150E, § 7 (f).

would be free to refuse the request.[14] The only question remaining is whether, as the commission found, the mayor's refusal to make such a request constituted a failure to bargain collectively in good faith in violation of G. L. c. 149, § 178L (4).

We agree with the commission's decision. The record shows that it was supported by substantial evidence and we find no error of law therein. See G. L. c. 30A, § 14 (8). It may be true, as the city asserts, that every breach of a collective bargaining contract is not per se a prohibited labor practice.[15] In this case, however, the mayor refused to implement what was probably the critical provision of the contract, the increased salary schedule, and his refusal appeared to be a violation of G. L. c. 149, § 178I, as well as a breach of contract. We agree with the commission that emphasis should be placed on the obligation of parties to a municipal collective bargaining contract to implement its provisions and we believe the mayor's refusal to honor this obligation properly could be found to constitute a prohibited practice under § 178L.[16] The fact that a judge of the Superior Court ruled later that year that payment of the 1972 wage increases would have been in violation of G. L. c. 44, § 33A, is not a proper defence, contrary to the city's contention.[17]

### III. THE FIREMEN'S SECOND CASE.

The firemen brought this second bill to determine the validity of an ordinance passed by the council in August,

---

[14] See § 178I, second paragraph, next to last sentence. Compare G. L. c. 150E, § 7, second paragraph, second sentence.

[15] Cf. *Association of Westinghouse Salaried Employees* v. *Westinghouse Elec. Corp.* 348 U. S. 437, 443, fn. 2 (1955), rehearing den. 349 U. S. 925 (1955), overruled on other grounds, *Smith* v. *Evening News Assn.* 371 U. S. 195 (1962); annotation, 6 A. L. R. Fed. 589, 595-599 (1971).

[16] Cf. *National Labor Relations Bd.* v. *M & M Oldsmobile, Inc.* 377 F. 2d 712, 715-716 (2d Cir. 1967); annotation, 6 A. L. R. Fed., *supra*, at 599-602.

[17] Cf. *National Labor Relations Bd.* v. *M & M Oldsmobile, Inc., supra,* at 716-717; *General Elec. Co.* v. *National Labor Relations Bd.* 412 F. 2d 512, 522 (2d Cir. 1969).

1972, again providing for the 1972 wage increases called for in the 1971 contract. The mayor had requested appropriations to fund this increase in February, 1972, as part of the 1972 budget request although he now claims he did so "inadvertently"; the council had authorized the appropriation in March, 1972. A judge of the Superior Court entered a final decree declaring the 1972 ordinance valid, and the Appeals Court affirmed. *Mendes* v. *Taunton,* 1 Mass. App. Ct. 852 (1973).

There was no error in the determination that the 1972 ordinance was valid. As explained in the Appeals Court's opinion, the ordinance did not conflict in any manner with G. L. c. 44, § 33A. Nevertheless, our holding in the firemen's first case with respect to the effect of the 1971 ordinance shows that this later ordinance was unnecessary.

IV. SUMMARY OF HOLDINGS AND ORDERS FOR RELIEF.

1. After the adoption of its annual budget for 1971, which was an election year, the city enacted ordinances giving an increase in pay to its firemen and policemen effective for more than three months in that year and providing for an additional increase in pay effective on January 1, 1972. The city funded the 1971 increases by supplementary appropriations, the increases were paid, and there is no issue about such payment before us. The policemen and firemen brought bills in equity for declaratory relief on the question whether the 1971 ordinances were valid in so far as they purported to grant increases for 1972. The Superior Court declared that they were not. We hold that they were valid and that the city is obligated to pay the policemen and firemen the increases in pay for 1972 as provided in the 1971 ordinances.

The Superior Court decrees are reversed, and new decrees are to be entered in accordance with this opinion.

2. The suit brought by the city for review of the decision of the commission was reported by the Superior Court

without decision to the Appeals Court, and therefore no decree has been entered in that case. We have discussed the issues raised in that case and expressed the opinion that the decision of the commission was correct. However, we have disposed of the controversy between the parties by holding the 1971 ordinance valid as to the 1972 wage increases. It is therefore not necessary to do more than to order the entry of a decree dismissing the bill for review of the commission's decision.

3. As to the firemen, the city enacted an ordinance in 1972 purporting to give them the same pay increases for 1972 which had already been provided by the 1971 ordinance. On the firemen's bill in equity for a declaration of the validity of the 1972 ordinance, the Superior Court entered a final decree declaring that it was valid. We agree with this conclusion, but in view of our holding that the 1971 ordinance entitled the firemen to the 1972 increase, there is no necessity for a declaration on the validity of the 1972 duplicating ordinance. The decree in that case is reversed, and a new decree is to be entered dismissing the bill.

The cases are remanded to the Superior Court for the entry of decrees in accordance with this opinion.

*So ordered.*