SCHOOL COMMITTEE OF HANOVER *vs.* JOHN CURRY
& others.[1]

Suffolk.    February 11, 1975. — April 1, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Hanover. School and School Committee. Municipal Corporations,* Collective bargaining. *Arbitration. Labor. Jurisdiction,* Arbitration. *Statute,* Construction. *Contract,* Collective bargaining contract.

The fact that an issue was submitted to an arbitrator for decision pursuant to a collective bargaining agreement and that an award was

---

[1] John Curry and other named persons individually and as representatives of the membership of the Hanover Teachers' Association, an unincorporated association.

made did not preclude judicial review on the merits where statutory policies were affected. [155-156]

A decision by a school committee to abolish a position of supervisor of music was a matter of educational policy within the exclusive managerial prerogative of the committee under G. L. c. 71, § 37, and as such could not be delegated for determination by an arbitrator pursuant to a collective bargaining agreement. [156-159]

PETITION filed in the Superior Court on May 16, 1974, to vacate the award of an arbitrator.

The case was heard by *Zarrow*, J.

*Edward P. Sullivan, Jr.*, for John Curry & others.

*Paul J. Kingston (Brian M. Kingston* with him) for the School Committee of Hanover.

HALE, C. J.  This is an appeal by representatives of the Hanover Teachers' Association (association) from an order of the Superior Court vacating an arbitration award. The award directed the Hanover school committee to reinstate the employee involved, with back pay, to the position of supervisor of music, which had been unilaterally abolished by the school committee.[2] We affirm.

The association and the school committee were parties to a collective bargaining agreement which was effective from September 1, 1971, through August 31, 1973. That agreement provided for a grievance and arbitration procedure to resolve disputes arising during the life of the agreement.

The factual background may be summarized from the opinion of the arbitrator. During January, 1973, prior to the expiration of the agreement, the school committee began to review the structure and operation of the music program in the school system. During the same period a request was made and approved for an additional teacher to be added to the music program. A five-year plan for the

---

[2] Throughout the period of the collective bargaining agreement, the employee had been compensated an extra amount above and beyond his base salary for performing the administrative duties associated with the position. Since being relieved of the responsibilities as supervisor of music, the employee has continued in his separate full-time position of music instructor.

music program was prepared by the employee involved and presented to the school authorities in early February, 1973. After discussion of the report at its meeting on February 12, 1973, the school committee decided to abolish the position of supervisor of music, effective as of the close of that school year, and to notify the association and the employee of that decision.

A grievance concerning that decision was filed by the association on March 5, 1973, and by the employee the following day. Over the course of the succeeding several months, the parties exchanged information and opinions relating to the proposed action until, on August 20, 1973, the school committee notified the association of its intention to adhere to its earlier decision to abolish the position.

The association thereupon invoked the grievance arbitration process provided for in the agreement, and the matter was heard in arbitration on February 13-14, 1974.[3] On April 17, 1974, the arbitrator rendered an award which stated that the school committee had violated the terms of the collective bargaining agreement in unilaterally abolishing the position of supervisor of music. The school committee was ordered to reinstate the employee to his former position with back pay.

The school committee filed an application in the Superior Court on May 16, 1974, to vacate the arbitration award. On June 28, 1974, the Superior Court granted the school committee's application to vacate the award and ordered that the award be struck. The association appealed from that order on July 12, 1974.

The school committee contends that the arbitration award was properly vacated under G. L. c. 150C, § 11 (a) (3), in that: (1) the arbitrator rendered an award which required the school committee to violate State law, specifically G. L. c. 71, §§ 37 and 43; (2) the arbitrator exceeded his powers in reinstating the employee with back

---

[3] The association and the school committee stipulated that the matters at issue which were being submitted to arbitration were as follows: "Did the School Committee violate the Agreement by eliminating the position of Supervisor of Music? If so, what should the remedy be?"

pay as of September 1, 1973, since the collective bargaining agreement under which the grievance arose had expired on August 31, 1973;[4] and (3) certain findings of the arbitrator were plainly erroneous.[5] In view of our disposition of the case, we do not reach the second and third contentions.

We face in this case the problem of harmonizing the new labor rights guaranteed to public employees with earlier provisions of law. What is essentially at issue here is the interrelationship between the management rights conferred upon the school committee by G. L. c. 71, § 37,[6] and those of the employees under the municipal employees collective bargaining statute, G. L. c. 149, §§ 178G-178N.[7] "The problem of fitting the statute governing collective bargaining for public employees into preëxisting statutes which overlap with it is not a new one." *Kerrigan* v. *Boston,* 361 Mass. 24, 31 (1972). See *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 502-503 (1970). It has, however, continued to be a major area of contention. See *Dedham* v. *Labor Relations Commn.* 365 Mass. 392 (1974); *Chief of Police of Westford* v. *Westford,* 365 Mass. 526 (1974); *Mendes* v. *Taunton,* 366 Mass. 109 (1974).

---

[4] But see *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* 363 U. S. 593, 596-598 (1960); *ILWU Local 142* v. *Land & Constr. Co. Inc.* 498 F. 2d 201, 204 (9th Cir. 1974); *Holly Sugar Corp.* v. *Distillery, Rectifying, Wine & Allied Workers Int'l Union,* 412 F. 2d 899, 903-904 (9th Cir. 1969).

[5] But see *Hannan* v. *Enterprise Publ. Co.* 341 Mass. 363, 365 (1960); *Morceau* v. *Gould-National Batteries, Inc.* 344 Mass. 120, 124 (1962); *Greene* v. *Mari & Sons Flooring Co. Inc.* 362 Mass. 560, 563 (1972); *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. 386, 390 (1973).

[6] That section provides, in pertinent part, that the school committee "shall have general charge of all the public schools . . .." These words first appeared in St. 1827, c. 143(5), and have not been substantively amended since that time. In view of our disposition of this case, we need not deal with the school committee's related contention under G. L. c. 71, § 43.

[7] General Laws c. 149, §§ 178G-178N, has now been repealed and replaced by a new public employees' collective bargaining statute, G. L. c. 150E, enacted by St. 1973, c. 1078, § 2, effective July 1, 1974. The development of the statutory law in this area is described in *Dedham* v. *Labor Relations Commn.* 365 Mass. 392, 396-399 (1974).

If there is a conflict, G. L. c. 149, § 1781, provides that the conflicting law prevails over the collective bargaining agreement.[8] Thus, in situations where there is a specific statutory mandate which conflicts with a provision of a collective bargaining agreement, the result is clear. Such was the situation in *Chief of Police of Dracut* v. *Dracut, supra,* and in *Doherty* v. *School Comm. of Boston,* 363 Mass. 885 (1973), both of which are relied on by the school committee. Those cases, however, are not dispositive here, as the mandate of c. 71, § 37, to the school committee is a general one. It is thus not clear to what extent or in what areas the later-enacted provisions of G. L. c. 149, § 178 H (1), which confers upon municipal employees the right "to bargain collectively . . . on questions of wages, hours and conditions of employment" and G. L. c. 149, § 178J, which provides for arbitration of disputes over the terms of an agreement, serve to limit the school committee's general mandate of managerial authority.[9]

The association contends that the submission of this controversy to arbitration by the school committee and the prior decision of the arbitrator within the scope of the reference (see note 3) preclude this court from reviewing the decision on the merits. See *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* 363 U. S. 593, 597-599 (1960). The school committee asserts that it does not seek a review of the merits of the arbitration award, however, but rather seeks a determination that the arbitrator exceeded the scope of his powers. Whether an arbitrator acted beyond the scope of his authority is "a question which is always open for judicial review." *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp.*

---

[8] Since July 1, 1974, the relevant section has been G. L. c. 150E, § 7 (see note 7).

[9] The collective bargaining agreement itself provided that "the School Committee . . . has final responsibility for establishing the *educational policies* of the public schools" (Art. II, 1 [a]) while the association, under the agreement, was recognized as the bargaining agent for "the purposes of collective bargaining with respect to wages, hours, [and] other *conditions of employment*" (Art. III, 1). (Emphasis added.)

*Authy.* 363 Mass. 386, 390 (1973). The fact that an issue
has been submitted to an arbitrator for decision and that
an award has been given does not preclude further judicial
review where statutory policies have been affected. As the
United States Supreme Court has recently stated, the arbi-
trator's "task is to effectuate the intent of the parties rather
than the requirements of enacted legislation." *Alexander* v.
*Gardner-Denver Co.* 415 U. S. 36, 56-57 (1974).[10] Where
the determinations to be made are primarily issues of public
law, the arbitrator possesses no special expertise,[11] and
there is no justification for allowing his decision to deter-
mine the school committee's statutory rights.

The effect of public employees collective bargaining stat-
utes upon preëxisting statutes vesting a great degree of
managerial discretion in public employers, e.g. school com-
mittees, has been the subject of much recent discussion.[12]

---

[10] The Court held that "the federal policy favoring arbitration does
not establish that an arbitrator's resolution of a contractual claim is
dispositive of a statutory claim under Title VII" of the Civil Rights
Act, 42 U. S. C. § 2000e, et seq. (1970). *Alexander* v. *Gardner-Denver
Co., supra,* at 46, n. 6. See also *Emporium Capwell Co.* v. *Western
Addition Community Organization,* 420 U. S. 50, 66 (1975). See gen-
erally Comment, The Inevitable Interplay of Title VII and the Na-
tional Labor Relations Act: A New Role for the NLRB, 123 U. Pa. L.
Rev. 158, 182-183 (1974). Contrast *Satterwhite* v. *United Parcel Serv.
Inc.* 496 F. 2d 448, 450, 452 (10th Cir. 1974), cert. den. 419 U. S. 1079
(1974).

[11] "[T]he specialized competence of arbitrators pertains primarily
to the law of the shop, not the law of the land. *United Steelworkers of
America* v. *Warrior & Gulf Navigation Co.* 363 U. S. 574, 581-583
(1960). Parties usually choose an arbitrator because they trust his
knowledge and judgment concerning the demands and norms of indus-
trial relations. On the other hand, the resolution of statutory or con-
stitutional issues is a primary responsibility of courts . . .." *Alexander*
v. *Gardner-Denver Co., supra,* at 57.

[12] Compare Wellington and Winter, The Limits of Collective Bar-
gaining in Public Employment, 78 Yale L. J. 1107, 1110-1111 (1969);
Wellington and Winter, Structuring Collective Bargaining in Public
Employment, 79 Yale L. J. 805, 864-868 (1970); with Edwards, The
Emerging Duty to Bargain in the Public Sector, 71 Mich. L. Rev. 885,
914-916, 933 (1973). See generally Comment, Defining the Scope of
Grievance Arbitration in Public Education Employment Contracts, 41
U. Chi. L. Rev. 814 (1974).

The passage of the collective bargaining statute clearly limits the managerial rights of the school committee with respect to wages and hours; the more difficult question is the extent of the limitation effected by the duty to bargain over conditions of employment.

In this situation, "[a]s elsewhere in the field of labor law, 'it ... [becomes] the task of the courts to accommodate, to reconcile the older statutes with the more recent ones.' " *Dedham* v. *Labor Relations Commn.* 365 Mass. at 400, quoting *Boys Mkts. Inc.* v. *Retail Clerks Union, Local 770,* 398 U. S. 235, 251 (1970). We are directed to coordinate the statutes in order "to form, if possible '... a harmonious whole consistent with the legislative purpose disclosed in the ... [municipal employees collective bargaining statute].' " *Mendes* v. *Taunton,* 366 Mass. at 114, quoting *Chief of Police of Dracut* v. *Dracut,* 357 Mass. at 499.

In the absence of more specific legislative direction, we cannot conclude that the Legislature contemplated that school committees should or could abdicate their management responsibilities over matters predominantly within the realm of educational policy. The phrases "conditions of employment" and "educational policy" obviously do not denote two definite or distinct areas as "[m]any educational policy decisions make an impact on a teacher's conditions of employment and the converse is equally true." *West Hartford Educ. Assn. Inc.* v. *DeCourcy,* 162 Conn. 566, 581 (1972). We conclude that the abolition of the position of supervisor of music represents a matter of educational policy within the exclusive managerial prerogative of the school committee.

Our conclusion here is similar to that reached in other jurisdictions which have considered this problem. For example, the Supreme Court of New Jersey, in an action concerning the soundness and validity of the determination by a board of education to consolidate departmental chairmanships, stated that the decision of the board was not a proper subject of either arbitration or mandatory negotiation under the relevant statute, in that it represented "a matter predominantly of educational policy within man-

agement's exclusive prerogatives. . . ." *Dunellen Bd. of Educ.*
v. *Dunellen Educ. Assn.* 64 N. J. 17, 29-30 (1973).[13]

The decision to abolish the position of supervisor of
music was within the exclusive managerial prerogative of
the school committee and as such it could not have been
delegated to the arbitrator for decision. Such decisions
concerning managerial rights in the public sector are quali-
tatively different from those in the private sector, not only
because of the presence of statutes regulating and limiting
the public employer, but also because of the necessity of
safeguarding public control over such decisions. To the ex-
tent that educational policy issues are subsumed under
collective bargaining agreements, public control and ef-
fective oversight concerning the decisions of the school
committee are diminished. There is a legitimate area of
managerial prerogative over educational policy which is
committed to the school committee and which it cannot bar-
gain away, as it could if it were a private party not subject
to public control.[14]

In concluding that the decision to abolish the position
was predominantly a matter of educational policy which
could not be delegated by the school committee for decision
by another, we do not mean to indicate that the school

---

[13] See *Matter of Carmel Central School Dist.* 76 Misc. 2d 63, 66-67
(N. Y. 1973), "The creation and abolition of positions within a school
district, in good faith, are functions of boards of education. . . . The
Board of Education may not delegate its authority to create or abolish
positions. Such creation and abolition are, therefore, not terms and
conditions of employment . . .." See also *School Dist. of Seward Educ.
Assn.* v. *School Dist. of Seward,* 188 Neb. 772, 784 (1972); *West Hart-
ford Educ. Assn.* v. *DeCourcy,* 162 Conn. at 581-583. Compare *Matter
of West Irondequoit Teachers Assn.* v. *Helsby,* 35 N. Y. 2d 46, 49, 52
(1974); *Washington Arbitration Case,* 436 Pa. 168, 176-177 (1969);
*Pennsylvania Labor Relations Bd.* v. *State College Area School Dist.*
9 Pa. Commonwealth Ct. Rep. 229, 237-244 (1973).

[14] See Summers, Public Employee Bargaining: A Political Perspec-
tive, 83 Yale L. J. 1156, 1193 (1974): "The private employer's pre-
rogatives are his to share as he sees fit, but the citizen's right to par-
ticipate in governmental decisions cannot be bargained away by any
public official." See also Kilberg, Appropriate Subjects for Bargaining
in Local Government Labor Relations, 30 Md. L. Rev. 179, 192-193
(1970).

committee should not have voluntarily discussed the decision in timely fashion with the association.

As the question of the abolition of the position of supervisor of music was not within the scope of collective bargaining because it was committed to the exclusive, nondelegable decision of the school committee by G. L. c. 71, § 37, we conclude that the issue here should not have been submitted to the arbitrator for decision and that his decision was a nullity. The order vacating the award is affirmed; judgment is to be entered to that effect.

*So ordered.*