388 A.2d 1369.

BARRINGTON SCHOOL COMMITTEE *v.* RHODE ISLAND
STATE LABOR RELATIONS BOARD *et al.*

JULY 17, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.   This is a petition for certiorari brought under the Administrative Procedures Act, G.L. 1956 (1969 Reenactment) §42-35-16, to review a judgment of the Superior Court reversing a decision and order of the State Labor Relations Board (the board). The board had found the Barrington School Committee (the committee) guilty of an unfair labor practice in refusing to negotiate the abolition of certain positions in the Barrington school system with the Barrington Teachers Association (the union). On appeal, a Superior Court justice found as a matter of law that the reorganization was not a mandatory subject of collective bargaining and in a judgment subsequently entered reversed

the order of the board. The union and the board petitioned this court for a writ of certiorari to review the action of the Superior Court justice. We granted the petition and directed the parties to brief the issue of whether or not the board was a proper party to the proceedings.

At the hearing before the board, it was stipulated:

1. that the committee was eliminating 11 departmental chairmanships in the Barrington junior and senior high schools as of September 1, 1974.
2. that the committee was also abolishing the position of athletic director; and
3. that the committee refused to negotiate these matters with the union.

At the hearing, the union rested its case on the stipulations without additional testimony but introduced as exhibits the collective bargaining agreements for the years 1969 through 1974 in order to establish that the positions being abolished had been the subject of collective bargaining and had been included in contracts of previous years.

The committee attempted to introduce testimony by the school superintendent explaining the reasons for the abolition of the 12 positions. Upon the board's refusal to admit this testimony, counsel for the committee made an offer of proof.[1] The board found that the committee's refusal to negotiate its actions with the union was an unfair labor practice and ordered the committee to "sit down and negotiate" with the union. The committee thereupon filed a complaint in Superior Court requesting review of the board's order under §42-35-15.

Before we consider the substantive issues, we must determine whether or not the question has become moot.

---

[1] In the offer of proof it was explained that grade nine was being removed from the junior high school and incorporated into the senior high school program, that the reorganization involved the abolition of the 11 departmental chairmanships and the athletic director's position and the creation of four new positions designated as coordinators.

The changes ordered by the committee in the school system were to affect the conduct between the board and the union for the 1974-75 school year. Since the committee did not obtain a stay of the board's order from the Superior Court pending the appeal, the committee should have negotiated the matter of the eliminated positions with the union for that year's contract. However, subsequent to the board's order, the committee apparently refused to discuss the matter of the eliminated positions. By the time the Superior Court heard the appeal in February 1976, the contract year had expired and clearly was long past when the case came on to be heard by this court.

We have held that under normal circumstances, a case involving a contract for an expired school year is moot. *Town of North Kingstown* v. *Teachers' Ass'n,* 110 R.I. 698, 297 A.2d 342 (1972); *Town of Scituate* v. *Teachers' Ass'n,* 10 R.I. 679, 296 A.2d 466 (1972). There are, however, two exceptions to this rule:

1.  when the parties stipulate that the "identical legal questions" apply to the present agreement as well as to the earlier contract. *Town of North Kingstown* v. *Teachers' Ass'n, supra,* or
2.  when the court finds that the question is of significant public interest or that similar occurrences may evade review in the future. *Town of Scituate* v. *Teachers' Ass'n, supra.*

Certainly, we could find that significant public interest would require a decision in this case, but we refused to do so for an equally important issue in *Town of Scituate.* Further, the parties have not agreed that the issue is still vital in relation to this year's contract. However, if this court were to dismiss the case on the ground of mootness, the committee would be unjustly rewarded for its failure or refusal to comply with the board's order. Also the union in this case and in similar cases could be greatly disadvantaged if the committee were allowed simply to ignore the board's order and delay action beyond the contract year. Under the

peculiar circumstances of this case we will therefore consider the substantive issues involved.

In our order granting the petition for the writ of certiorari, we directed the parties to brief the question of whether or not the board was a proper party to the proceedings. Attention was called by the court to the case of *Hassell* v. *Zoning Board of Review*, 108 R.I. 349, 275 A.2d 646 (1971).

In *Hassell* this court found that a zoning board of review did not have standing to seek Supreme Court review of a Superior Court judgment by means of the prerogative writ of certiorari. Standing in zoning cases is accorded only to applicants who are aggrieved by the judgment to be reviewed either personally or "in an official capacity as a representative of the public." *Hassell* v. *Zoning Board of Review, supra* at 351, 275 A.2d at 648. Zoning boards cannot claim to be aggrieved personally nor to represent the public in such matters since the statutory scheme delimiting the powers of zoning boards expressly provides that judicial aid in the enforcement of ordinances is to be sought only by cities or towns, acting through their solicitors, and not by zoning boards themselves. G.L. 1956 (1970 Reenactment) §§45-24-6 and 45-24-7. *Id.* at 352-53, 275 A.2d at 648-49.

By contrast, the Rhode Island State Labor Relations Act, P.L. 1941, ch. 1066, §17, which created and defines the State Labor Relations Board, expressly authorizes the board itself to seek judicial aid in the enforcement of its orders and to initiate such actions in the Superior Court. G.L. 1956 (1968 Reenactment) §28-7-26; P.L. 1941, ch. 1066, §8. The passage of the Administrative Procedures Act (APA), P.L. 1962, ch. 112, §1, (made applicable to proceedings before the State Labor Relations Board by §42-35-18) further provided that "any party in interest" may petition this court for a writ of certiorari when aggrieved by a final judgment in the Superior Court in an action brought under the APA. G.L. 1956 (1977 Reenactment) §42-35-16.

It seems clear that just as a town solicitor properly

represents the interest of the public in seeking judicial aid in a zoning matter — including bringing a petition for a writ of certiorari to this court, *Mauran* v. *Zoning Board of Review*, 104 R.I. 604, 247 A.2d 853 (1968) — so the labor relations board may represent the public in seeking judicial aid in a labor dispute and should have similar authority to petition this court for the issuance of a writ of certiorari. That being the case, there would appear to be no reason to bar the board as a proper party to these proceedings.

Both the union and the committee subscribe to this argument and further direct our attention to federal cases permitting the National Labor Relations Board to initiate certiorari proceedings in the United States Supreme Court, and also cite the Rhode Island case of *Buffi* v. *Ferri*, 106 R.I. 349, 259 A.2d 847 (1969), in support of their mutual conclusion that the State Labor Relations Board is, in fact, a proper party to these proceedings.

We therefore hold that the board is a proper party to these proceedings.

The fundamental substantive issue in this case is the reconciliation of §16-2-18 with §28-9.3-2. In other words, the question to be decided is whether the abolition by the committee of the 12 positions previously held by the teachers is a matter of educational policy and thus not a mandatory subject of collective bargaining or whether it is a term or condition of employment and thus subject to negotiation. Section 16-2-18 vests the town school committee with the "entire care, control, and management" of the public school interests, including the selection of teachers. The more recently enacted School Teachers' Arbitration Act in §28-9.3-2 gives public school teachers the right to organize and engage in collective bargaining concerning "hours, salary, working conditions and all other terms and conditions of professional employment."

Here, the committee decided that the reorganization of the junior high school and high school systems, which consisted

of the inclusion of grade 9 in the high school and a new inter-disciplinary system in the junior high school, mandated the elimination of 11 departmental chairmanship positions and that of athletic director. Four positions of "planning and development coordinators" were proposed to replace or consolidate the eliminated jobs. The committee proceeded to implement the changes without consulting the union because, it contended, the reorganization was a matter of educational policy completely within the exclusive, non-delegable jurisdiction of the committee according to §16-2-18 and *Dawson* v. *Clark*, 93 R.I. 457, 176 A.2d 732 (1962). However, the teachers who had formerly been department chairmen had received extra compensation and additional released time in those positions; therefore, the union insisted that the "terms and conditions" of employment had been affected and that the matter was a subject for mandatory bargaining.

The Superior Court justice relying on cases from other jurisdictions found that the abolition of the 12 positions by the committee was a matter of educational policy peculiarly within the province of the committee under the provisions of §16-2-18 and was not a term or condition of employment under §28-9.3-2. He found that the board erred as a matter of law in ordering the committee to negotiate with the union. Two of the cases relied on by the Superior Court justice may be distinguished on their facts from the instant case. In both *West Hartford Educ. Ass'n* v. *DeCourcy*, 162 Conn. 566, 295 A.2d 526 (1972), and *Dunellen Bd. of Educ.* v. *Dunellen Educ. Ass'n*, 64 N.J. 17, 311 A.2d 737 (1973), the respective school boards made unilateral decisions either to consolidate or to create new positions. Both courts found that such acti-vity was strictly a matter of educational policy within the school board's sole determination. However, in *DeCourcy* no teacher was deprived of a position or experienced a diminu-tion of salary or title. In *Dunellen* the school board consoli-dated the chairmanships of the social studies and English departments, after the social studies chairman had resigned,

and offered the combined chairmanship to the former English chairman. The action thus taken did not adversely affect any individual teacher. Clearly the case before us presents more compelling circumstances for negotiation with the union as the condition of employment of individual teachers was substantially altered and adversely affected. The Superior Court justice further relied on two Massachusetts cases to support his position that the abolition of the 12 positions by the committee was a matter of educational policy within the province of the committee under §16-2-18 and was not a term or condition of employment under §28-9.3-2.

In *School Committee* v. *Curry,* 325 N.E.2d 282 (Mass. App. 1975), an arbitrator's award was overturned because the court determined that the abolition of the post of music supervisor in a local public school was the nondelegable, exclusive, responsibility of the school committee. The abolition took place at the end of a one-year contract year.

This case was decided under Mass. G.L. ch. 71, §37, the equivalent of Rhode Island §16-2-18.[2] Under the Massachusetts statute the court held that the school committee lacked the power to bind itself, or to delegate to an arbitrator the power to bind it, to an agreement preventing it from abolishing a supervisory position. *School Committee* v. *Curry, supra.*

The Supreme Judicial Court in affirming directed that *Curry* should be read in conjunction with a companion case

---

[2]It should be noted that the Massachusetts equivalent of G.L. 1956 (1968 Reenactment) §28-9.3-2 in effect at the time *School Committee* v. *Curry* was decided contained the restrictive clause that "In the event that any part or provision of any such [collective bargaining] agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail * * *" Mass. G.L. ch. 149, §178*I*. This statute has since been repealed and a more liberal one enacted. Compare the Rhode Island Labor Relations Act, to which the School Teachers' Act is referenced in part, "Insofar as the provisions of this chapter are inconsistent with the provisions of any other general, special or local law, the provisions of this chapter shall be controlling." G.L. 1956 (1968 Reenactment) §28-7-44.

*School Committee* v. *Raymond*, 343 N.E.2d 145 (Mass. 1976) dealing with the abolition of a similar job, but this time the abolition was in the middle of a two-year contract rather than at the end of one. *School Committee* v. *Curry*, 343 N.E.2d 144 (Mass. 1976).

In *School Committee* v. *Raymond, supra,* the Supreme Judicial Court affirmed the vacating of the aribitrator's requirement that the downgraded employee be reinstated but upheld that part of the arbitrator's order providing that the teacher be made whole for loss of compensation saying: "We have no doubt that the abolition of an employee's position, his transfer to a lesser position, and reduction of his salary involved his 'wages, hours and other conditions of employment * * *." *School Committee* v. *Raymond, supra* at 148.

The court then went on to disclaim any attempt to delineate the scope of mandatory or permissive bargaining stating:

> "We do not decide any question with respect to the mandatory or permissive scope of collective bargaining. 'A marked distinction exists between a duty to engage in collective bargaining, and a freedom to agree to submit controversies, whether or not subject to mandatory bargaining to arbitration.' " *School Committee* v. *Raymond, supra* at 149.

Both the committee and the union assert that the quoted language of *School Committee* v. *Raymond, supra* tends to strengthen their respective arguments. However, after a close reading of the case and applying the language to the instant case, we are constrained to say that the abolition of the 12 positions would be more a condition of employment than a matter of educational policy within the province of the committee.

The union before us, as it did before the Superior Court, relies heavily on *Fibreboard Paper Products Corp.* v. *NLRB*,

379 U.S. 203, 85 U.S. 203, 85 S. Ct. 398, 13 L. Ed. 233 (1964), wherein the United States Supreme Court held that the "contracting out" of work formerly performed by members of the bargaining unit was covered under the phrase "conditions of employment" and was thus a mandatory subject of collective bargaining. The union therefore urges that we follow the federal precedent in the instant case. The committee, however, argues that the statutory right to negotiate terms and conditions of employment should be more narrowly construed in the public sector than the private sector. This is particularly so in the educational field lest the employer be guilty of an unconstitutional delegation of its responsibilities.

In the past, in view of the parallels between our state system of labor regulations and the federal system, we have recognized the persuasive force of federal cases which have construed the phrase "terms and conditions of employment." *See Town of Narragansett* v. *International Ass'n of Fire Fighters, Local 1589,* 119 R.I. 506, 380 A.2d 521 (1977); *City of East Providence* v. *Local 850, Int'l Ass'n of Firefighters* 117 R.I. 329, 366 A.2d 1151 (1976); *Belanger* v. *Matteson,* 115 R.I. 332, 346 A.2d 124 (1975).

In our opinion, the abolition of the 12 positions occupied by members of the union clearly comes within the meaning of "terms and conditions of employment." While we postulate no general rule, in the circumstances here we conclude that the abolition of the 12 department chairmanships is not completely a matter of educational policy but is an appropriate matter for negotiating or bargaining concerning the effect on the individual teachers involved. In addition, to require the committee to bargain about the matter at issue would not in our opinion significantly abridge its freedom to manage and control the school system. We do not mean that the union should be able to dictate to the committee on matters strictly within the province of management. What we do say is that when, as here, the problem involved concerns both a question of management and a term or condition

480

of employment, it is the duty of the committee to negotiate with the teachers involved.

The petition for certiorari is granted, the Superior Court judgment reversing the decision and order of the State Labor Relations Board is quashed, the decision and order of the State Labor Relations Board are affirmed and the records are ordered returned to the Superior Court with our decision duly endorsed thereon.

*Natale L. Urso, Vincent F. Kane,* for petitioner.

*Tillinghast, Collins & Graham, James A. Jackson,* for respondent.