DECISION
This matter is before the Court on the motion of plaintiff, Exeter-West Greenwich Regional School District School Committee ("EWG" or "District") to stay and vacate an arbitration award finding that EWG had violated its Collective Bargaining Agreement ("CBA") with the defendant, Exeter-West Greenwich Regional School District Teachers' Association/NEARI/NEA, ("Union") when it created a Fine Arts Department without first obtaining the agreement of the Union. The Union has filed a cross motion to confirm the arbitration award. Jurisdiction is pursuant to G.L. 1956 § 28-9-14.
 I Facts and Travel
EWG is a regional school committee organized under the laws of the State of Rhode Island. As a school committee, the General Assembly has seen fit to delegate to the District the statutory duty to exercise "[t]he entire care, control, and management of all public school interests. . . ." Section 16-2-9(a).[1] That power of "care, control, and management" is limited *Page 2 
however, to the extent that it may not be employed by the District to "limit or interfere with the rights of teachers to collectively bargain pursuant to Chapters 9.3 and 9.4 of title 28" of the Rhode Island General Laws nor may they be used to "abrogate any agreement reached by collective bargaining." Section 16-2-9(b). The District employs a number of professionals who have collectively organized to exercise their rights under Chapter 9.3 of the General Laws to collectively bargain "concerning hours, salary, working conditions, and all other terms and conditions of professional employment." Section 28-9.3-2 (a). The terms of the labor contract between EWG and the Union are spelled out in the 2004-2007 CBA. Included in the terms of the CBA are provisions about the leadership of school departments. Specifically, the contract provides that "[w]hen there are four (4) or more full time equivalent members teaching in a subject matter area, a Department Head will be hired for that area. Both Parties must agree in order to combine a department." CBA, Art. 28 A.1.
In June 2006, EWG and the Union began discussing the possibility of combining the Music and Arts Departments into a Department of Fine Arts, but apparently, the talks broke down when the District replaced its superintendent. Without obtaining the Union's agreement, the District established the Fine Arts department for grades 7 through 12, beginning with the 2006-2007 school-year. In creating the new Fine Arts Department, the District combined the former Art and Music Departments. No teachers lost their jobs in the combination. Additionally, because both the Music and Art Departments had less than four teachers prior to the combination, no one lost a position as department chair in the combination. Rather, a new Chair *Page 3 
of the Fine Arts Department was created, which in addition to higher pay, came with a reduction in teaching load.
Despite the recognized benefits associated with the new Department, the Union grieved asserting that the District violated Article 28 A.1 of its CBA. In accordance with the terms of the CBA, the grievance proceeded to arbitration through the American Arbitration Association where the dispute was assigned to Arbitrator, Peter B. Doeringer. Doeringer held hearings on October 2, 2007 and November 30, 2007.
At the hearing, evidence relating to the decision to implement the Fine Arts Department was presented to the arbitrator. During questioning, the Fine Arts Department Chair emphasized the educational value of the department:
 "Q: And so, would I be correct as a lay person in understanding that a Fine Arts Department combining art and music would be a mechanism to enhance the delivery of educational or instructional programs within the District?
 A: Definitely" (Testimony of Fine Arts Department Chair, Transcript, 11/30/07, p. 29)
Furthermore, the importance of the Fine Arts Department to the educational mission of the school was not only advanced by the District, but recognized by the Union:
 "Q: And, likewise, I take it that you do not dispute the notion that there's merit, consistent with educational trends that exist today and No Child Left Behind, that a combined fine arts program in the district is valuable?
 A: Absolutely. We strongly concur." (Testimony of the Union's President, Transcript, 10/04/07, p. 92)
On March 31, 2008, Arbitrator Doeringer issued an award in favor of the Union. Doeringer determined that the appropriate remedy would be to ". . . restore the status quo ante by nullifying the establishment of the Fine Arts Department." He postponed, however, the implementation of that remedy so as to avoid "unduly disrupting the educational mission of the *Page 4 
Fine Arts Department . . ." for the remainder of the year. EWG then timely filed this motion seeking to stay and vacate the award.[2]
 II Standard of Review
Rhode Island General Laws 1956 § 28-9-18 provides this Court with the specific authority to review and vacate arbitration awards:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13.
Because of the states strong interest in the finality of arbitration and in respecting the freedom of the parties to contract, where a matter is properly arbitrable, this Court must uphold the Arbitrator's award so long as the award `draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract. . . ."Jacinto v. Egan, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978). Thus, "absent a manifest disregard of a contractual provision or a completely irrational result, the courts have no authority to vacate an arbitration award." Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584,587 (R.I. 1998) (internal citation omitted).
However, before an arbitration award is owed a duty of deference, the subject matter of the arbitration must be properly arbitrable. Vose v.Rhode Island Broth. of Correctional Officers, 587 A.2d 913, 913
(R.I. 1991). The question of whether a particular dispute is arbitrable is a question of law subject to de novo review. State v. Rhode IslandCouncil 94, 925 A.2d 939, 944 *Page 5 
(R.I. 2007). When school committees carry out their statutorily required duties, they exercise a portion of the state's sovereignty. Dawson v.Clark, 93 R.I. 457, 460 (1962). While a school committee "can negotiate many items with the professional and non-professional employees, it cannot bargain away statutory powers and responsibilities."Pawtucket School Committee v. Pawtucket Teachers' Alliance,652 A.2d 970, 972 (R.I. 1995). Thus, "[a]rbitration awards that act to modify the scope of the school committee's statutory duty are unenforceable because the arbitrator has no authority to make them." Woonsocket Teachers'Guild v. Woonsocket School Committee, 770 A.2d 834,839 (R.I. 2001).
 III Analysis
The Parties' dispute centers on whether the decision to combine the Art and Music Departments falls within the District's non-delegable statutory duties and is, therefore, non-arbitrable. The District argues that the decision to manage the structure of the schools by establishing a department is a legally non-delegable statutory duty and is therefore non-arbitrable. Both parties agree that the change from an Art Department and a Music Department to a Department of Fine Arts is a change in school organizational structure. Therefore, contends the District, the fact that the School Committee is granted statutory control "over the entire care, control, and management of all public school interests" vests the non-delegable responsibility to make such organizational changes in its School Committee. Section 16-2-9(a). The District urges that a finding of arbitrability would divest the Committee of its statutory rights and award the care, control and management of the public schools to a private arbitrator in contravention of state law. Furthermore, the District argues that the fact that Article 28 of the CBA purports to require the agreement of the Union before combining departments is irrelevant because the *Page 6 
power is not properly the subject of arbitration. Rather, asserts the District, the decision represents the exercise of its managerial prerogatives, and the District's responsibility to negotiate with the Union extends only so far as its decision affects terms and conditions of employment.
In contrast, the Union argues that the decision to combine departments constitutes a decision concerning "hours, salary, working conditions, and all other terms and conditions of professional employment," and does not impede the Districts statutorily non-delegable powers, or at the very least is a mixed question affecting both "terms and conditions of professional employment" and management and control of schools, and is therefore an appropriate subject for collective bargaining. Section 28-9.3-2 (a). Accordingly, because Article 28 requires the agreement of the Union prior to combining departments, and because that approval was never granted, the dispute is an appropriate one for arbitration. To find otherwise, argues the Union, would be to permit the District to ignore its obligation to bargain with the Union in good faith. Furthermore, the Union contends, because the decision is arbitrable and because the Arbitrator's decision is a passably plausible interpretation of the CBA, this Court must confirm the arbitration award. Finally, should this Court find the matter was not arbitrable, the Union urges this Court to limit its holding to the facts at hand and not to declare Article 28 of the CBA wholly invalid.
As mentioned previously, under Rhode Island State Law, the Committee has statutory responsibility over the "entire care, control, and management of all public school interests."[3] Section 16-2-9(a) In addition to the general delegation of powers, the statute goes on to specifically enumerated a number of powers:
 (1) To identify educational needs in the community. *Page 7 
 (2) To develop education policies to meet the needs of the community.
 . . .
 (5)To have responsibility for the care and control of local schools.
 . . .
 (20) To establish policies governing curriculum, courses of instruction, and text books.
These delegations of the state's sovereign power provide specific tools for the school district to determine and advance the educational policies of the schools. In contrast, teachers are granted the general right to bargain over "hours, salary, working conditions, and all other terms and conditions of professional employment" Section 28-9.3-2 (a).
Our Supreme Court most recently addressed the question of what decisions are appropriately the subject of collective bargaining and what decisions are dedicated, exclusively, to the sound judgment and discretion of the school committee in North Providence School Committeev. North Providence Federation of Teachers, 945 A.2d 339 (2008). The Court began its analysis by noting that "[i]t goes without saying that statutory duties that are specifically imposed upon school committees by law (and activities closely associated therewith) may not be made the subject of the arbitral process . . ." and specified that non-delegable duties comprise a wide swath of the powers a School Committee may exercise. Certainly, these powers stem from those listed in § 16-2-9(a), but they are not limited to those listed, for, "even in the absence of such specific statutory mandates, . . . school committees are vested with a plethora of powers and responsibilities that relate to the essence of the educational mission that may not be bargained away"Id. at 346. Our High Court continued:
 "In enacting Title 16, the General Assembly delegated to the school committees . . . expansive powers over education; it spoke in extremely broad terms when it vested authority in the public schools in the state's several school committees. It is true that the sweeping language of Title 16 must be read in harmony with the provisions of the Michaelson Act; it is nonetheless a basic rule of *Page 8 
law that school committees are not at liberty to bargain away their powers and responsibilities with respect to the essence of the educational mission. In our view, in the case we are figuratively standing on the banks of the Rubicon: a very strong argument can be made that a decision about having or not having a composition period for teachers of English is directly related to the essence of the educational mission and is therefore non-arbitrable." Id. at 347
Though ultimately finding that the dispute at issue — the elimination of a composition period for the High School English Department — was arbitrable, the Court provided clear guidance about what constitutes a non-delegable duty and what constitutes a condition of employment subject to arbitration:
 "It is because the school committee in this case opted to ground the abolition of the composition period primarily on a fiscal rational that we have come to conclude that the arbitral decision need not be vacated. If the school committee had justified the elimination of the composition period on the primary basis that said elimination was undertaken for the purpose of improving the education of North Providence High School students in English and if the school committee had explained its thinking in that regard in a cogent manner, it is entirely possible that we would have considered that administrative decision to be non-arbitrable." Id.
Thus, under North Providence, in order to determine whether the decision to combine departments is arbitrable, this Court must look to the motivations behind the decision. If the decision is motivated "on the primary basis that said elimination was undertaken for the purpose of improving the education . . ." the school is able to provide, then the decision is immune from arbitration. If, on the other hand, the decision is grounded "primarily on a fiscal rational," then the decision is subject to review by arbitration. Id.
Here, it is undisputed that the combination of the Art and Music Departments into a Department of Fine Arts was justified by the improvement in educational service delivery to the pupils of the EWG School District. Indeed, even the president of the Union "strongly concur[s]" that the combination of departments is of educational value and consistent with current trends in *Page 9 
improving education. Thus, unlike the elimination of the composition period at issue in North Providence, 945 A.2d at 339, which was justified by the cost savings associated with the action, the combination of departments at issue in this case, undertaken for the acknowledged purpose of improving education, falls within the District's non-delegable statutory duties to determine the educational policy of the district. See Section 6-2-9(a)(1), (2), (5), (20).
The Union, relying on our Supreme Court's decision in BarringtonSchool Committee v. R.I. State Labor Relations Board, 120 R.I. 470, 470,388 A.2d 1369, 1369 (1987) asserts that the decision to combine departments, though motivated by a desire to improve education, nonetheless constituted a decision impacting conditions of employment, or at the very least, dealing with a mix of employment conditions and managerial policy, which, the Union contends, under Barrington SchoolCommittee, is subject to negotiation and arbitration. Id.
Close scrutiny of the decision in Barrington School Committee, reveals that the Union's reliance on that case is misplaced. In BarringtonSchool Committee the Supreme Court considered "whether the abolition by the committee of the 12 positions previously held by the teachers is a matter of educational policy and thus not a mandatory subject of collective bargaining or whether it is a term or condition of employment and thus subject to negotiation." 120 R.I. 470, 475, 388 A.2d 1369, 1376
(1987). The District had reorganized its junior high school and high school to include grade 9 within the high school and to implement an interdisciplinary system for junior high school instruction.Id. at 475-76. Incident to the reorganization, the district, refusing to negotiate with the union, eliminated 11 departmental chairmanships and the athletic director's position. The Superior Court ruled that the abolition of the positions was a matter of educational policy committed to the district by § 16-2-18 and not a mandatory subject of collective bargaining. Our Supreme Court reversed, holding "the abolition *Page 10 
of the 12 positions occupied by members of the union clearly comes within the meaning of terms and conditions of employment" as contemplated by Section 28-9.3-2. Barrington School Committee,120 R.I. at 479, 388 A.2d at 1375 (internal citation omitted). In so holding, the Court distinguished, factually, the case before it from a number of cases, relied upon by the Superior Court Justice, holding that unilateral decisions to consolidate or to create new positions were matters of educational policy vested solely in the board:
 "In both West Hartford Educ. Ass'n v. DeCourcy, 162 Conn. 566, 295 A.2d 526 (1972), and Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n, 64 N.J. 17, 311 A.2d 737 (1973), the respective school boards made unilateral decisions either to consolidate or to create new positions. Both courts found that such activity was strictly a matter of educational policy within the school board's sole determination. However, in DeCourcy no teacher was deprived of a position or experienced a diminution of salary or title. In Dunellen the school board consolidated the chairmanships of the social studies and English departments, after the social studies chairman had resigned, and offered the combined chairmanship to the former English chairman. The action thus taken did not adversely affect any individual teacher." Id. at 476; 388 A.2d at 1373.
The Court then observed that the situation before them "present[ed] more compelling circumstances for negotiation with the Union as the condition of employment of individual teachers was substantially altered and adversely affected" leading it to conclude that "the abolition of the 12 department chairmanships is not completely a matter of educational policy but is an appropriate matter for negotiating or bargaining concerning the effect on the individual teachers involved."Id. The circumstances in the case at bar are readily distinguishable from those present in Barrington School Committee in that the consolidation of the Art and Music Departments did not adversely affect any individual teacher. Dunellen Bd. of Educ. v. Dunellen Educ.Ass'n, 64 N.J. at 17, 311 A.2d at 737. Furthermore, unlike the school committee in the *Page 11 
Barrington case, the District, to the extent its decision may affect the employment conditions of teachers, acknowledged the obligation to negotiate. (see District's Memorandum of Law, p. 11)
Our Supreme Court's decision in North Providence brings into focus the tension between the broad rights granted to school committees by state law to control educational policy and the rights given to educational professionals to negotiate the terms of their employment. It is difficult, if not impossible to conceive of any decision made by a school committee related to its educational program that would not have some impact on the teachers who staff the district. While bargaining over the impact or effects on teachers may be required under § 28-9.3-1et seq., it does not follow, necessarily, that the decision itself must be negotiated. Along this line, we are informed by our Supreme Court's decision in North Providence that a school district may not bargain away powers and responsibilities which relate to "the essence of the educational mission." 945 A2d at 346.
Where a decision is motivated principally by educational policy, that is, where a decision is made for the purpose of enhancing the quality of the education provided by subject district, that decision reflects the non-delegable discretion vested, by law, in the School Committee.Id. Thus, the central question here is whether the challenged action establishing the Fine Arts Department relates "to the essence of the educational mission" and whether that action was, primarily, "undertaken for the purpose of improving education" North Providence,945 A.2d at 347. On the record before it, this Court can reach no other conclusion than that it was.[4] Accordingly, the Court finds that the action of the District amounted to an exercise of its non-delegable powers which may neither be bargained away nor ceded to an arbitrator. Thus, this *Page 12 
Court will vacate the decision of the Arbitrator nullifying the establishment of the Fine Arts Department as being in excess of his authority.
As noted previously, Arbitrator Doeringer based his award on Article 28(A)(1) of the CBA, which on its face required the Union's assent prior to establishment of the consolidated Fine Arts Department. However, where, as here, a contract provision effectively affords the Union or an arbitrator veto power over actions of the District which directly relate to the "essence of the educational mission", the provision is unenforceable as an unlawful delegation of the statutory duties of the District.
To the extent that Article 28(A)(1) may be construed to mandate bargaining over the effects on staff of an educational policy decision of the District, it may be enforced. But, so construed, it simply amounts to a restatement of that which § 28-9.3-1 et seq. already require. See, Barrington School Committee v. R. I. Labor RelationsBoard, supra.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] In addition to the general delegation of "care, control, and management," § 16-2-9(a) goes on to enumerate a number of specific powers the board may exercise, including powers:
 (1) To identify educational needs in the community.
 (2) To develop education policies to meet the needs of the community.
 . . .
 (5) To have responsibility for the care and control of local schools.
 . . .
 (20) To establish policies governing curriculum, courses of instruction, and text books.
[2] Normally, arbitration awards must be implemented prior to seeking their vacation. However, where, as here the arbitrator postponed implementation, § 28-9-18(b) presents no obstacle to consideration of the motion to vacate.
[3] Though Exeter-West Greenwich is a regional school district § 16-3-11 grants to regional school committees "all the powers and duties conferred by law upon school committees. . . ."
[4] The Court recognizes that it may be possible for a School Committee to attempt to couch its budgetary decisions in the language of educational policy. Here, the Union makes no assertion that the decision to combine departments was motivated by anything other than a desire to improve the delivery of educational services to the District's pupils. *Page 1