DECISION
Plaintiffs Portsmouth School Committee ("School Committee") and Susan Lusi, in her capacity as Superintendent of Schools in the Portsmouth School Department ("Superintendent"), filed this request for declaratory relief, arguing that the School Committee is excused from collectively bargaining with NEA Portsmouth ("Union") with respect to its recently adopted policy governing the hiring, transfer, layoff and recall of Portsmouth schoolteachers. The Union has moved to dismiss for lack of subject matter jurisdiction.
 I FACTS AND TRAVEL
Plaintiffs School Committee and Superintendent bring this action seeking a declaration of its rights by the Court. The Union and School Committee ("Parties") entered into a CBA which, by its terms, expired in August of 2010. Prior to the CBA's expiration, the Parties met on several occasions, attempting to negotiate a new CBA, but *Page 2 
failed to reach an agreement. On January 25, 2011, The School Committee adopted School Committee Policy 4111 ("Policy 4111"), which declared that "the selection and appointment of all school department personnel not requiring a Superintendent's Certificate shall be made by the Superintendent with the consent of the School Committee." The Policy also establishes a "Staffing Advisory Committee" ("SAC") which is to advise the Superintendent in the establishment and implementation of the staffing procedures and to "provide recommendations directly to the Superintendent regarding how staffing policy and its implementation should be changed in the future." (Policy 4111 at 2.) Policy 4111 does not provide the Union or the bargaining unit with significant participation in this process, other than a partial say in the selection of the SAC's members. Policy 4111 also reserves the right of the school district not to renew non-tenured teachers based solely on a good-faith finding that "better teachers are available." (Policy 4111 at 3.) The Committee claims that the purpose of this policy is to enable the school to make teacher appointments based on teaching effectiveness and student needs. In implementing this policy, the School Committee wished to move away from the hiring policy contained in the expired CBA, which made employment decisions based primarily on seniority, and, which it claims, largely ignored student needs and teacher effectiveness. Policy 4111 directs the Superintendent to consider an applicant's educational background and certification, work experience, past relevant job performance, interview performance, professional artifacts, and evidence of teacher effectiveness as measured by student growth. (Id. at 2-3.) Strict seniority is to be used only in the event of a tie between two applicants. *Page 3 
The School Committee justifies the adoption of Policy 4111 by pointing to the Rhode Island Board of Regents' Basic Education Plan ("BEP"), which mandates, among other things, that each school district "establish a set of policies and an array of strategies to recruit, hire, and retain highly effective district and school personnel." The School Committee also cites a recent memorandum by Commissioner Gist interpreting the BEP's requirements, in which she states that "no system that bases teacher assignments solely on seniority can comply with this regulation."
The Union filed an unfair labor practice charge against the School Committee with the State Labor Relations Board ("SLRB"), alleging a refusal to bargain in violation of Section 28-7-13.1, and arguing that the School Committee may not unilaterally implement a new staffing policy without negotiating with the Union. The School Committee asked the Commissioner of Elementary and Secondary Education for an advisory opinion, as to whether Policy 4111 comports with the BEP, whether seniority may be the dominant criteria for staffing decisions, and whether the School Committee is required to enter into an agreement with the Union prior to instituting policies regarding hiring, transfers and non-renewal of teaching staff. The Commissioner has yet to respond to this request for an advisory opinion.
Subsequently, the School Committee filed the within complaint with this Court seeking an injunction preventing the SLRB from deciding the Union's unfair labor practice charge on the ground that the charge "requires the SLRB to determine the scope of the School Committee's authority under Title 16," an issue, they argue, that exceeds the jurisdiction of the SLRB. The School Committee also asks this Court for a declaration of its right to control matters of "educational policy," to "develop policies to meet the *Page 4 
needs of the community," and to manage the "hiring, transfer, promotion and layoffs of school district personnel." Secs. 16-2-9(2); 16-2-9(6); 16-2-14. The Union filed a motion to dismiss for lack of jurisdiction, arguing that the SLRB, not the Superior Court, has proper jurisdiction and is the appropriate forum for resolution of this issue posed by the School Committee's unilateral adoption of Policy 4111.
 II SUBJECT MATTER JURISDICTION
The preliminary issue before this Court is whether the Committee's request for an injunction and declaratory relief is within the jurisdiction of this Court, pursuant to the Uniform Declaratory Judgment Act (UDJA), or whether this is a matter of labor relations reserved to the SLRB as contemplated by Title 28. Sect. 9-30-1, et seq. The School Committee asks this Court to enjoin the SLRB from hearing and deciding NEA Portsmouth's unfair labor practice claim and instead, asks the Court to assert jurisdiction to declare the rights of the Committee granted by Title 16. See Sec. 9-30-2. The UDJA grants the Superior Court jurisdiction to construe the rights and responsibilities of any party arising from a statute. See Sec. 9-30-2; Canario v.Culhane, 752 A.2d 476, 478-479 (R.I. 2000).
The School Committee points to Section 16-2-18, which commits to the school committees of the several towns the "entire care, control and management of all the public school interests." The School Committee further asserts its right to "develop education policies to meet the needs of the community," to exercise "policy responsibility for the employment and discipline of school department personnel," and to "adopt personnel policies." Secs. 16-2-9(2); 16-2-9(6); 16-2-14. Plaintiff Superintendent cites *Page 5 
her statutory rights to "implement policies established by the school committee," to "recommend educational plans, policies, and programs to meet the needs of the district," and to select and appoint teachers and other school department personnel with the consent of the school committee. Secs. 16-2-11, 16-2-18. Chapter 2 of Title 16, supplemented by policies formulated by the Board of Regents, provides the source of the School Committee's authority to unilaterally implement Policy 4111.
The School Committee requests that this Court declare that the adoption of Policy 4111 is an exercise of its non-delegable duty to manage issues of "educational policy," thus relieving it of the obligation to bargain with the Union prior to its implementation. In any event, the School Committee contends that whether or not Policy 4111 is a matter of educational policy or a mandatory subject of collective bargaining is an issue for the Superior Court to resolve, pursuant to its jurisdiction to render declaratory judgments. The Union argues that the SLRB, not the Superior Court, possesses jurisdiction and is the appropriate forum for resolving whether the School Committee was required to bargain with the Union with respect to its adoption of Policy 4111.
Pursuant to the State Labor Relations Act, the SLRB has exclusive original jurisdiction over allegations of unfair labor practices.See Sec. 28-7-20; MacQuattie v. Malafronte,779 A.2d 663, 635 (R.I. 2001). The Teachers' Arbitration Act grants teachers the right to organize and engage in collective bargaining concerning "hours, salary, working conditions and all other terms and conditions of professional employment." Sec 28-9.3-2; seeBarrington School Committee v. Rhode Island State Labor RelationsBoard et al.,120 R.I. 470, 475, 388 A.2d 1369, 1373, (1978). Section 28-7-13.1(1) explicitly provides that it is an unfair labor practice for a public employer to refuse to bargain *Page 6 
collectively. The intent of the legislature in drafting the State Labor Relations Act is to "require a complaining party to submit their grievances to the SLRB before any judicial remedy can be invoked." Warren Ed. Ass'n v. Lapan, 103 R.I. 163, 172 (1967). If a school committee fails to negotiate in good faith, the Union must commence proceedings before the SLRB prior to turning to the courts. Id. Accordingly, the Union was empowered by statute to file an unfair labor practice charge before the SLRB alleging that the School Committee refused to bargain collectively.
The Superior Court does not have jurisdiction over Unfair Labor Practice matters until administrative remedies have been exhausted and an appeal has been filed pursuant to the Administrative Appeals Act. Sec. 42-35-15; MacQuattie v. Malafronte,779 A.2d 663, 635 (R.I. 2001) (citing Paton v. Poirier,109 R.I. 401, 406, 286 A.2d 243, 245 (1972)). Filing a declaratory judgment action in Superior Court, after a party has begun to seek relief at an administrative level, is proper only when the complaint seeks a declaration that the challenged ordinance or rule is facially unconstitutional or in excess of statutory power, or that the agency or board has no jurisdiction. Kingsley v.Miller, 120 R.I. 372, 338 A.2d 357 (R.I. 1978). A party is required to exhaust all available administrative avenues of relief before filing suit in Superior Court. See Izzi v. Warwick SchoolComm., 105 A.2d 818 (R.I. 1954) (denying petition for a writ of mandamus where petitioner had a "plain and adequate" administrative remedy). The purpose of administrative exhaustion is to allow the agency to develop a factual record, apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes before the Superior Court intervenes. Ezraty v. Puerto Rico,648 F.2d 770, 774 (1st Cir. 1981). *Page 7 
In the Warren case, the court stated:
 "By petitioning the labor relations board, whose expertise in this sensitive area is unquestioned, the association may well find such assistance so efficacious in solving their negotiation problems that the necessity of any judicial intervention will be averted . . . To allow the association to bring this action without first pursuing the administrative remedy which the legislature intended they so employ, would be tantamount to redrafting the legislation under study." Warren at 873-874.
The U.S. Supreme Court discussed the importance of exhausting administrative remedies before seeking judicial intervention.Olmstead v. L.C. ex rel Zimring, 527 U.S. 581 (1999). The Court observed that "[t]he well reasoned views of the agencies implementing a statute `constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Olmstead, 527 U.S. 581 (citing Bragton v.Abbot, 524 U.S. 624, 642 (1998) (quoting Skidmore v.Swift Co., 323 U.S. 134, 139-140 (1944))). This Court values an agency's specialized understanding of a particular area of the law, and believes that exhaustion of administrative remedies will "promote accurate results, not only at the agency level, but also by allowing more informed judicial review." Ezraty v. PuertoRico, 648 F.2d 770, 774 (1st Cir. 1981).
The Plaintiffs argue that the SLRB has no jurisdiction to resolve the purported conflict that exists between the School Committee's authority granted by Title 16 and the teachers' collective bargaining rights granted by Chapter 9.3 of Title 28. The Court disagrees. The Plaintiffs have not pointed out any direct conflict between the two statutes. Furthermore, the Rhode Island General Laws and Rhode Island Supreme Court precedent require that Title 16 and Title 28 are not read to be in conflict. It is "incumbent on this court to harmonize statutes wherever possible."Belanger v. Matteson, 346 A.2d 124, 139 (Paolino, concurring). *Page 8 
"[T]he sweeping language of Title 16 must be read in harmony with the provisions of the Michaelson Act. [Chapter 9.3 of Title 28]" Notably, Section 16-2-9 explicitly states in setting out the powers and duties of School Committees, that "[n]othing in this section shall be deemed to limit or interfere with the rights of teachers and other school employees to collectively bargain pursuant to Chapters 9.3 and 9.4 of Title 28 or to allow any school committee to abrogate any agreement reached by collective bargaining."[1] Sec. 16-2-9(23)(b).
In Belanger, the union filed a grievance on behalf of a teacher who complained that another teacher with less seniority was appointed to a promotional position.Id. at 127-128, 334-337. In evaluating whether the promotion of the less senior teacher was a non-delegable prerogative of the School Committee, and hence not a subject for arbitration or bargaining, the court recognized that local school committees have a considerable amount of authority under Title 16 which "[cannot] be delegated in absence of legislative authority to do so."Id. (quoting Dawson v. Clark,93 R.I. 457, 167 A.2d 732 (1962). However, the court also noted the importance of reading the broad language of Title 16 in light of the legislature's clear intent in enacting Rhode Island's collective bargaining scheme:
 "In reading [Section] 16-2-18, one must not forget that some 70 years later the General Assembly in enacting the School Teachers' Arbitration Act ordered the school committees of this state to go and sit down at the bargaining table with the representatives of their teachers' union and then negotiate in `good faith' on such matters as hours, salary, working conditions and `all other terms and *Page 9 
conditions of employment.' We have no doubt that the Legislature intended that classroom teachers should have the same opportunity of upward mobility as other workers who, because of the promotional provisions of their labor contract, remain on the job and hope that some day because of their superior performance they will move up the employment ladder and assume another and a better-paying position. An undue fixation with the language of [Section] 16-2-18 and a failure to broaden one's viewpoint so as to see what the General Assembly did, once the midpoint of this century had been reached, could result in the emasculation of the School Teachers' Arbitration Act." Belanger v. Matteson at 136.
This Court declines the School Committee's invitation to declare, as a matter of law, that the authority granted to the School Committee by law in educational policy matters brings the adoption of Policy 4111 outside the category of mandatory subjects of collective bargaining. The term "educational policy" is not a talisman for the avoidance of the obligation to collectively bargain. For this Court to consider a school committee decision as grounded on educational policy such that it may be excused from bargaining, the School Committee must provide evidence that the decision is "directly related to the essence of the educational mission." North Providence School Committee v. NorthProvidence Federation of Teachers,945 A.2d 339, 347 (R.I. 2008). Although the court in NorthProvidence did indicate that certain policy decisions of the School Committee are non-delegable when they involve issues of educational policy which are "undertaken for the purpose of improving the education of . . . students," the court made clear the importance of demonstrating this purpose in a "cogent manner."Id. In the case at bar, this Court does not have the benefit of a fully developed record with which it may review the relevant facts to determine if the policy in question relates exclusively to matters of educational policy, or whether and, if so, to what extent the policy deals with subjects *Page 10 
which impact teachers' terms and conditions of professional employment. Barrington, 388 A.2d 1369, 1375.
A decision as to whether the unilateral adoption of Policy 4111 is a mandatory subject of collective bargaining involves a case-specific inquiry. This Court cannot declare, as a matter of law, that the adoption of Policy 4111, very broadly governing the hiring, transfer, layoff, and recall of teachers, would not affect the teachers' wages and working conditions, or other terms and conditions of their professional employment, and thus not present issues for collective bargaining.
In the opinion of the Court, there exists a substantial gray area between the black of educational policy, and the white of bargainable employment issues. Rhode Island case law has considered managerial prerogative as to issues of public interest and policy as a limitation on the scope of bargaining and arbitrability, but only where an issue clearly involves a matter of public interest and should be exclusively reserved to governmental decision-making processes. See Vose v. Rhode Island Brotherhood of CorrectionalOfficers, 587 A.2d 913, 914 (R.I. 1991); see also Rhode IslandBrotherhood of Correctional Officers v. State,643 A.2d 817, 820 (R.I. 1994) (limiting the Vose ruling to "critical area[s] of state power," such as maintaining public safety). A number of courts have attempted to formulate tests to determine whether certain issues are bargainable. See,e.g., Waterloo Education Assoc. v. Iowa Public EmploymentRelations, 740 N.W.2d 418 (2007); West Hartford EducationAssoc. v. DeCourcy, 162 Conn. 566, 295 A.2d 526 (1972) (limiting non-negotiable matters of educational policy to "those matters which are fundamental to the existence, direction, and operation of the enterprise"); Sutherlin Education Assoc. v. Sutherlin SchoolDist., 25 Or. App. 85, 548 P.2d 204 (1976) *Page 11 
(balancing the element of educational policy involved against the effect that subject has on a teacher's employment). Other courts have recognized the difficulty of drawing any general rules as to principles governing bargainability or negotiability, and have applied the concept on a case-by-case basis. See,e.g., Barrington School Committee v. Rhode Island StateLabor Relations Board, 120 R.I. 470, 388 A.2d 1369 (R.I. 1978). While this Court declines to postulate a general rule, it should be reiterated that when "the problem involved concerns both a question of management and a term or condition of employment, it is the duty of the committee to negotiate with the individual teachers involved." Id. at 479, 1375. It has been held elsewhere that a school committee may "[breach] the duty to bargain . . . by unilaterally implementing a decision that directly `changes' or derivatively `impacts' a mandatory subject of bargaining in a manner that is substantial enough to matter." Portland Firefighters'Assoc., Local 43 IAFF v. City of Portland,245 Or. App. 255 (2011).
Regardless of whether Policy 4111 is or is not a non-delegable implementation of "educational policy," the School Committee must still address the unfair labor practice charge filed against it by the School Committee before the SLRB. The Union's charge that the School Committee failed to bargain collectively is properly there. Should a complaint be issued, the School Committee may then defend before the SLRB on the grounds that it is not required to bargain over issues of "educational policy" which are the non-delegable responsibility of the School Committee. This Court has previously stated that the SLRB may consider and apply other areas of law in its consideration of an unfair labor practice complaint.See, e.g., East Providence EducationAssociation/NEARI v. East Providence School Committee,2009 R.I. Super. Lexis 9 (East Providence I). The *Page 12 
fact that questions concerning the breadth of the School Committee's authority under Chapter 2 of Title 16 and the BEP may be inextricably intertwined with the merits of the unfair labor practice charge is not grounds to strip the SLRB of its jurisdiction, and the Defendants of their administrative remedy. It would be an abuse of the Court's discretion to undertake consideration of a matter when original jurisdiction with respect to the matter properly resides with an administrative body, and no sufficient reason has been presented to bypass the available administrative remedy.
The Plaintiff School Committee may very well achieve a satisfactory outcome before the SLRB. Depending on the outcome, the School Committee or the Union may ask this Court to review the Board's decision by way of an administrative appeal. If the unsuccessful party believes that the SLRB has not given due deference to the School Committee's authority over educational policy or the Union's collective bargaining rights, the Superior Court may hear the appeal on those grounds. At that time, the Court will have the advantage of conducting its review with the benefit of the SLRB's findings and expertise, and a fully developed factual record.
 III CONCLUSION
For the foregoing reasons, this Court declines to exercise jurisdiction to hear this matter at this time. Accordingly, this Court hereby grants the Defendant Union's Motion to Dismiss for lack of jurisdiction.
Counsel should present an appropriate order for entry.
[1] The adoption of subsection 16-2-9(23)(b) in 1988 may be argued to have been an endorsement of the holding in Belanger in respect to its statement of the public policy behind the Teachers Arbitration Act and the court's recognition of the need to harmonize the non-delegable prerogatives of the School Committee in its management of educational policy, and teachers' rights to collectively bargain with the School Committee over matters affecting terms and conditions of their employment.

 *Page 1